## Denniston *v.* Home Life & Investment Co., Appellant.

*Corporations—Sale of charter—Liability of corporation—Ratification.*

Where several persons purchase the charter and stock of a corporation, and guarantee the vendors against any claim for commissions which might be made by an agent in whose hands the charter had been placed for sale, the purchasers are personally liable, and nothing short of a clear and unequivocal ratification can render the company liable on the guaranty.

In such a case a resolution authorizing the treasurer of the company to repay the purchasers the money advanced by them for the purchase of the charter, will not amount to a ratification, when it does not appear from the minutes of the corporation, or in any other way, that the company knew of the existence of the guaranty when the resolution was passed.

Argued Nov. 13, 1893. Appeal, No. 63, Oct. T., 1893, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1882, No. 253, on verdict for plaintiff, William H. Denniston. Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a guaranty. Before COLLIER, J.

The action was against the appellant and one William S. Kirk, who was not, however, served nor an appearance entered for him.

The testimony tended to show that about 1871 or 1872 a charter was granted to a corporation known as the East End Life Insurance and Improvement Trust Co., the name of which, within a few months, was changed to the Liberty Improvement Bank.    About 1874 it failed and made a voluntary assignment for the benefit of its creditors.    Its assets were distributed among the creditors of the concern, the stockholders receiving nothing.    Some of the depositors could not be found, and it was claimed that some moneys remained in the hands of the assignee.    The plaintiff was the president of this corporation, and about 1890 was the owner of a considerable majority of its stock.    There was no meeting of the board of directors from the time of the failure until about 1890.    Early in 1890 plaintiff agreed to sell to Bentz, the representative of a Philadelphia syndicate, the original charter and letters patent of the company, together with all the stock, papers, books, accounts and other effects of the company in his possession for the sum of $13,000, on condition that the sale should be completed within a specified time.    This agreement, negotiated by one Fulton, was not carried out and was supposed by plaintiff to be at an end.

On August 1, 1890, the plaintiff entered into a written agreement with one William S. Kirk to deliver to him the charter or letters patent of said corporation, the name of which had recently been changed by decree of the court of Allegheny county to the Home Life and Investment Co. of Pennsylvania, and all his ownership and interest of every kind therein, agreeing also to transfer $1,000, then in the hands of a trustee for carrying out his agreement with the Philadelphia syndicate, and his right to the stock of said company then in the hands of said syndicate, for the sum of $13,000, of which $1,000 was to be paid in cash and the balance within thirty days.

Kirk agreed, among other things in said agreement, to indemnify the plaintiff against any claims which might be made against the latter on the part of Fulton for any alleged services in negotiating the first sale.    Subsequently, Fulton, in an action against the plaintiff, recovered about $5,000 for services alleged to have been rendered in effecting said sale, alleging that Kirk, although he had pretended to act for himself, was really acting on behalf of the same Philadelphia syndicate with which Fulton had dealt.

This action was brought on Kirk's agreement of indemnity, alleging that in executing the same he had acted as agent of the Home Life and Investment Co., or, if not so acting in the first place, that he had made said agreement on behalf of the Philadelphia syndicate, who had ratified the same by subscribing and paying the $13,000, and also that the board of directors of the company had ratified the same and were bound thereby.

The evidence tended to show an unincorporated organization by the members of the Philadelphia syndicate under the name of the Home Life and Investment Co., and their negotiations through Kirk and others for the purchase of the charter in the plaintiff's possession. The evidence was conflicting as to knowledge by the projectors of the terms of Kirk's contract with the plaintiff. It appeared that certain members of the Philadelphia syndicate contributed the $13,000 paid to the plaintiff. Vacancies were created in the board of directors of said corporation and filled by the Philadelphians, and a permanent organization effected by them on Aug. 20, 1890. The projectors on Aug. 7th called an assessment of 15 per cent on the stock, payable Aug. 23d.

On Aug. 20th a meeting of the new board of directors as reorganized was held, and the following resolution adopted:

"Resolved, that the various sums of money advanced by the stockholders to purchase charter, etc., as set forth in the writing appended hereto, be repaid by order drawn therefor by the president, countersigned by the secretary and treasurer, when the amount thereof shall be in hand from the payment of the assessments called for by the resolution of this board."

Copy of writing appended to above resolution:

"PHILADELPHIA, August 18, 1890.

"We hereby subscribe and pay, each of us, the sum of one thousand dollars for immediate use in the purchase of charter, at Pittsburgh, of the Home Life and Investment Company, the excess of this payment of $1,000 over our respective subscriptions to be refunded when the assessments payable August 23, 1890, are collected by the treasurer."

On Sept. 2, 1890, at a special meeting of the corporation, the treasurer was, by resolution, directed to repay to the subscribers of the $13,000 fund all of the money paid by them in excess of 15 per cent upon the stock taken by them, and " that

15 per cent installment receipts be given to said parties for the difference between these amounts and the amounts loaned to the company for the purchase of charter, etc., as per resolution of Aug. 20, 1890." ·

Evidence was further offered to show subsequent dealings by the corporation under the charter, including resolutions to compel the assignee of the Liberty Improvement Bank to file his account and make distribution to the parties entitled to the balance in his hands and to have the assignee properly discharged.

Defendant's request for binding instructions refused. [8]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were, among others, (8) above instructions, quoting them.

*Henry La Barre Jayne, Biddle & Ward* with him, for appellant, cited: Loan Co. *v.* Stonemetz, 29 Pa. 535; Smead *v.* Indianapolis, etc., R. R. Co., 11 Ind. 104; Madison, etc., *v.* Plank Road Co., 7 Wis. 59; Hazard *v.* Durant, 11 R. I. 196; Morawetz, secs. 233, 249, 423; Bateman *v.* Mayor of Ashton, 3 H. & N. 340.

*S. U. Trent, James S. Young* and *W. B. Negley* with him, for appellee, cited: Taylor on Corp., par. 88–111; Morawetz on Private Corporations, sec. 549; Watts's Ap., 78 Pa. 374; Manhattan Hardware Co. *v.* Roland, 128 Pa. 118; Bell's Gap R. R. *v.* Christy, 79 Pa. 59; Kelsey *v.* Bank, 69 Pa. 430; Swisshelm *v.* Swissvale Laundry Co., 95 Pa. 370; Swan *v.* Scott, 11 S. & R. 164; Thomas *v.* Brady, 10 Pa. 170; Bly *v.* Second Nat. Bank, 79 Pa. 453; Wright *v.* Pipe Line Co., 101 Pa. 204; Oil Creek & Allegheny River R. R. *v.* Pennsylvania Transportation Co., 83 Pa. 160; Morawetz, sec. 689; Evans on Principal and Agent, 76.

OPINION BY MR. JUSTICE McCOLLUM, May 31, 1894:

The plaintiff agreed to sell the charter, stock etc. to Bentz for thirteen thousand dollars, and of this sum Fulton, who was his broker in procuring the offer from Bentz, was to receive five thousand dollars. Alleging that he was released from his agree-

ment with Bentz by the latter's default, he sold the property on the first of August, 1890, to Kirk for the sum that Bentz was to pay for it, and Kirk agreed to indemnify him against any claim that Fulton might make for services in negotiating for the sale of it. In his statement of claim in this action he declares that Kirk in making the purchase represented " that it was entirely for himself that he was acting, and not for said Bentz and his associates." He now says that Bentz and Kirk were acting for the same parties and that in consequence thereof he became liable and was compelled by suit to pay to Fulton five thousand dollars for his services in negotiating the sale. He brought this action on the indemnity clause in his written and sealed agreement with Kirk, and he recovered in the court below a judgment of $7,002.87, which represents the sum he alleges he paid to Fulton together with the costs and counsel fees incurred in defending the suit on Fulton's claim. It will be observed that this is not a case in which the promoters of a corporation are demanding from it compensation for services rendered or reimbursement for moneys expended preliminary to the creation and organization of it, but that it is a case upon a contract entered into by an individual for the purpose of obtaining control of a corporation then in existence. In purchasing the plaintiff's stock and acquiring from him the possession of the charter, books and papers of the Home Life and Investment Company, Kirk did not represent the company but was acting for himself and possibly for other persons associated with him for the purpose of obtaining control of it. The company therefore was not jointly bound with Kirk for the performance of his agreement with the plaintiff. Nothing short of a clear and unequivocal ratification of the agreement could render the company liable for a breach of any of the covenants contained therein. As we think there was no such ratification in this case we need not inquire whether it was within the power of the corporation to assume all of Kirk's liabilities under his agreement with the plaintiff. The latter however contends that it did assume them by the resolution adopted by its new board of directors on the 20th of August, 1890. There was nothing in this resolution however which bound the defendant company to perform Kirk's contract with the plaintiff, or recognized him as its agent in the transaction evidenced by the

written agreement of August 1st. It does not appear upon the minutes of the corporation, or in any other way, that the company knew of the existence of such an agreement when the resolution was passed. The action of Kirk and his associates must be distinguished from the action of the corporation. The latter cannot be held upon the agreements of the former without distinct proof of its ratification of them. We have carefully examined and considered the evidence in this case, and our conclusion is that the defendant company is not liable to the plaintiff upon the indemnity clause in his agreement with Kirk, and that the judgment against it must therefore be reversed. This view of the case sustains the eighth specification of error and renders it unnecessary to consider the other specifications. As Kirk has not appealed from the judgment we make no order as to him.

Judgment against the Home Life and Investment Company reversed.