### CUDABACK v. HAY et al.

#### (Circuit Court, S. E. D. Pennsylvania. January 17, 1905.)

#### No. 4.

1. MORTGAGES—CONTRACT TO PAY—INDEMNITY—JUDGMENTS.

Defendants, having purchased certain real estate in the name of plaintiff's assignor, as trustee, executed to him a contract agreeing to furnish him all money necessary to pay taxes on the land and the interest and principal on certain bonds and mortgages thereon which had been executed by such trustee as they became due, and to indemnify and save him harmless from all costs, charges, and expenses thereon, whereupon he agreed to hold the property in trust for defendants, and to convey the same, subject to such incumbrances, only on their demand. *Held*, that such contract was an agreement to pay the mortgages, etc., and not merely a contract of indemnity, so that defendants' liability thereon was fixed on the rendition of a deficiency judgment in foreclosure proceedings against the trustee, defendants having failed to pay or defend the same after notice.

2. SAME—ASSIGNMENT—TIME—EXECUTION.

It was immaterial that the trustee assigned his rights under the contract to plaintiff on the same day the deficiency judgment was rendered, and before an execution had been issued thereon.

Motion by Defendant for Judgment Notwithstanding the Verdict.

John A. McCarthy and Bayard Henry, for plaintiff.

Edward J. Fox, for defendants.

J. B. McPHERSON, District Judge. The undisputed facts of this case, as they appeared at the trial, are as follows: In August, 1894, the defendants, Hay and Fisler, agreed to buy some lots in the city of Niagara Falls from Francis Belden. Hay and Fisler lived in Easton, Pa., and for the sake of convenience, and perhaps for other reasons, decided to have the title put in the name of a resident of Niagara Falls. Accordingly, they chose I. J. Forbes King, who was Belden's partner, and the deed was made to him. At or about the same time King and the defendants entered into a written agreement, which recites the conveyance to King, goes on to state that he has given three purchase-money mortgages for $2,400, $1,200, and $2,400, respectively, and then provides as follows:

"And whereas said purchase was made and such conveyance taken by said party of the first part in behalf of and in trust for the parties of the second part hereto, and the sum of $3064.80 paid in cash therefor on receiving such conveyance was made by the parties of the second part hereto.

"Now therefore this agreement witnesseth, that the parties of the second part, in consideration of the premises and of the agreements hereinafter contained on the part of the party of the first part, agree to furnish all sums of money necessary from time to time to pay the taxes on said lots and the interest and principal on said bonds and mortgages as the same become due and payable, and to indemnify and save harmless said party of the first part from all costs, charges and expenses by reason of his executing said bonds and mortgages, or any of them.

"And the party of the first part, in consideration of the premises and of the agreements hereinbefore contained on the part of the parties of the second part, agrees to hold title to said lands in trust for the parties of the second part, and to convey the same, or any parcel thereof, to such party or parties as he may be directed by said parties of the second part hereto, subject to all the terms and conditions of said mortgages, and free from all other incumbrances excepting only all taxes levied or assessed upon said premises from and after the date hereof."

The mortgages fell due in August, 1897, and August, 1899, and the defendants did not furnish all the money that was needed to pay them off. One seems to have been paid in full, but the other two received only payment on account. In consequence of this default, William Cudaback, the present plaintiff, to whom the mortgages had been assigned, began foreclosure proceedings in November, 1900, naming Hay, Fisler, King, and some other persons, as defendants. On February 27, 1901, King caused the following notice to be served upon Hay and Fisler:

"You will please take notice, that I have been served with summons and complaint in the above-entitled action, which is an action brought to foreclose a mortgage of two thousand four hundred dollars ($2,400.00), made by me to Francis C. Belden, on or about the 10th day of August, 1894, and that in said action a judgment is demanded against me for the amount of any deficiency which may remain after the sale of the property described in said mortgage, by reason of the bond executed by me to said Francis C. Belden and accompanying said mortgage.

"Also please take notice, that the mortgage sought to be foreclosed is the same mortgage, for two thousand four hundred dollars ($2,400.00), dated August 10, 1894, mentioned in a certain agreement made by you with me, dated August 13, 1894, in and by which agreement you covenanted and agreed with me to furnish all sums of money necessary from time to time to pay the taxes on the lots described in said mortgage, and the interest and principal of said bond and mortgage, as the same became due and payable, and to indemnify and save me harmless from all costs, charges, and expenses by reason of my executing said bond and mortgage.

"You will also please take notice, that I require you to defend said action against me and to indemnify and save me harmless from all costs, charges, and expenses therein. And I hereby demand that you do now furnish all sums of money for taxes on said lots or pay said taxes, and that you also furnish all sums of money necessary for me to pay the interest and principal on said bond and mortgage or that you pay all principal and interest thereon; and that in case of your failure to pay said taxes, interest and principal, and to indemnify and save me harmless from such costs, charges, and expenses, I shall hold you personally responsible to me under said agreement for all sums required to be paid by me and for the amount of any judgment for deficiency which may be obtained against me in this action."

A similar notice was given at the same time as to the other mortgage. The defendants did not appear, made no defense, and paid no money, the result being that on May 27, 1901, the Supreme Court of New York entered a decree of foreclosure, adjudging the sum due upon each mortgage, and directing the premises to be sold by a referee

named in the order. On June 17, 1901, King caused the following notice to be served on Hay and Fisler:

"Please take notice that a judgment of foreclosure was entered in the above-entitled action in the county clerk's office of the county of Niagara on the 27th day of May, 1901, for $1,398.80, the amount found due the plaintiff upon the mortgage described in the complaint, and for $131.64, plaintiff's costs and disbursements in this action; that in said action a judgment is demanded against me for the amount of any deficiency which may remain after the sale of the property described in said mortgage by reason of the bond executed by me to Francis C. Belden, and accompanying said mortgage; and that the property described in said mortgage has been advertised for sale by Eugene Cary, Esq., the referee appointed in said action to sell said property, and the same will be sold on the 20th day of June, 1901, at 10 o'clock in the forenoon, at the law office of Devereux & Knox, No. 2009 Main street in the city of Niagara Falls, county of Niagara, state of New York.

"Also please take notice that the mortgage sought to be foreclosed is the same mortgage for $1,200.00, dated August 10th, 1894, mentioned in a certain agreement made by you with me, dated August 13th, 1894, in and by which agreement you covenanted and agreed with me to furnish all sums of money necessary from time to time to pay the taxes on the lots described in said mortgage, and the interest and principal of said bond and mortgage as the same became due and payable, and to indemnify and save me harmless from all costs, charges, and expenses by reason of my executing said bond and mortgage.

"You will also please take notice that I require you to protect said property upon such sale and prevent any sacrifice of the same, and to save me harmless from all costs, charges, and expenses in this action, and from any judgment against me for deficiency upon the sale of said property; and I hereby demand that you do now furnish all sums of money for taxes on said lots or pay said taxes which are now in arrears, and that you also furnish all sums of money necessary to pay the interest and principal on said bond and mortgage, or that you pay such principal, interest and taxes, and said sum of $1398.80 and costs, on or before the day of said sale, and that you pay any deficiency that may remain against me after said sale; and that in case of your failure to pay said several sums and to indemnify and save me harmless from such costs, charges, expenses, taxes, principal, interest and deficiency, I shall hold you personally responsible to me, under said agreement, for all sums required to be paid by me, and for the amount of any judgment for deficiency which may be obtained against me in this action."

A similar notice concerning the sale under the other decree was served at the same time. The defendants did not bid at the sale, which was duly postponed until July 1st, and the mortgaged property was sold to William Cudaback for the sums of $700 and $1,500, respectively. The referee reported the sale, certifying also that "the amount of deficiency is $1,492.62 (and $877.62), for which the defendant I. J. Forbes King is liable under such judgment." On July 26 the Supreme Court confirmed the report in all respects, and "ordered and adjudged that the plaintiff, William Cudaback, recover from the defendant, I. J. Forbes King, the sum of $1,492.62 (and $877.62), the deficiency stated in said report." Upon the same day, King executed the following paper:

"For value received I hereby sell, assign, transfer and set over unto William Cudaback of the city of Niagara Falls, N. Y., the annexed contract, dated August 13th, 1894, made by Samuel L. Fisler and Thomas A. H. Hay with me, and any and all rights, claims, demands, actions, or causes of action which I have or may have against said Samuel L. Fisler and Thomas A. H. Hay, or either of them by reason thereof; and I authorize said William Cudaback, in my name or otherwise, to demand, collect, receive, sue for

and recover all damages sustained or which may be sustained by me, by reason of any breach of said contract, or of any agreement therein contained, by said Samuel L. Fisler and Thomas A. H. Hay, or either of them, including any claim, right, demand or cause of action which I have or may have against them, or either of them, by reason of their failure or refusal to furnish moneys to pay the interest or principal on the mortgage or the taxes on the lots described in said contract, such damages including the amount of two deficiency judgments entered against me in Niagara county clerk's office on the 26th day of July, 1901, in two foreclosure actions in which said William Cudaback was plaintiff and said Samuel L. Fisler, Thomas A. H. Hay and I, with others, were defendants; one of said deficiency judgments being for the sum of $1,492.62 and the other for the sum of $877.62, and they together amounting to the sum of $2,370.24."

In consideration of the execution of this assignment, and upon the same day, the deficiency judgment against King was satisfied of record. No execution was issued upon it, and it does not appear whether such process would have resulted in collecting the money from him.

The present suit was brought by Cudaback in his own name, but the right which he is seeking to enforce is the right of King. It rises no higher than its source, and the source is the contract made by the defendants with King, in which they agreed to pay the mortgages, and to indemnify and save him harmless from all costs, charges, and expenses by reason of his having bound himself personally by these instruments. There is some discussion in the briefs of counsel concerning the particular law that should be applied to the construction of the defendants' agreement; but I see no reason to decide the question, since the law of Pennsylvania, the law of New York, and the law of the federal tribunals do not differ upon this subject. The rule that prevails in all of these jurisdictions is that such an agreement as was made by the defendants on August 13, 1894, is not a contract of indemnity against loss or damage, but is a contract to pay and to protect from liability, and that the party injured by a breach may sue at once, although he has not been compelled to put his hand into his pocket, and may recover the full amount agreed to be paid.

In Wicker v. Hoppock, 73 U. S. 94, 18 L. Ed. 752, it appeared that Wicker had promised Hoppock that, if the latter would obtain judgment against the firm of Chapin & Co., and levy upon certain chattels owned by the firm, Wicker "would bid it off for whatever the judgment and costs might be." Hoppock obtained judgment for $2,206, and levied on the chattels, but Wicker did not bid at the sale, and Hoppock bought the property for a nominal sum. The trial court instructed the jury that Hoppock was entitled to recover the full amount of his judgment, with interest and costs, and this instruction was approved by the Supreme Court. Mr. Justice Swayne, who delivered the opinion of the court, declared that Wicker's agreement was not a contract of indemnity against loss, saying:

"If the contract in the case before us were one of indemnity, the argument of the counsel for the plaintiff in error would be conclusive. In that class of cases the obligee cannot recover until he has been actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit. But there is a well-settled distinction between an agreement to indemnify and an agreement to pay. In the latter case a recovery may be had as soon as there is a breach of the contract, and the measure of the damages is the full amount agreed to be paid."

In Mills v. Dow, 133 U. S. 423, 10 Sup. 413, 33 L. Ed. 717, the relevant facts were that Dow and Pratt assumed certain railroad contracts which Mills had sublet to Hill and Burgess "with the understanding and agreement that they will and shall well and truly save harmless the said Mills from any and all liability by reason of said contracts * * * and any claim by reason of said * * * Hill and Burgess * * * agreements above mentioned." Afterwards Hill and Burgess demanded payment of their account from Mills, who demanded payment in turn from Dow and Pratt, but without effect. He thereupon sued Dow and Pratt, although he had not paid Hill and Burgess, and was permitted to recover the full amount of the claim; the court saying:

"The agreement to assume the contract, in connection with the further agreement to save the plaintiff harmless from liability, was broken by a failure to pay the parties to whom the plaintiff was liable, and it was not necessary to a breach that the plaintiff should show that he had first paid those parties.

"By the instrument in question the defendants took the place of the plaintiff, and became, after the instrument was executed, principals in the work of constructing the railroad; and their acceptance of the assignment and the conditions preceding it included the subcontracts, and what was due and to become due upon them. The contract is not merely one to indemnify the plaintiff from damage arising out of his liability, but is an agreement to assume his contracts and to discharge him from his liability."

In Johnson v. Risk, 137 U. S. 300, 11 Sup. Ct. 111, 34 L. Ed. 683, it was shown that upon the dissolution of two partnerships, one of the partners bought the other's interest, agreeing, inter alia, to assume the payment of the debts and liabilities of each firm, and to protect and keep the other harmless from the payment of any part thereof. Concerning this agreement, the Supreme Court said:

"By that agreement Risk contracted to pay all the debts and liabilities of every kind of the firms, to assume the liabilities, and to save Johnson harmless. This was broken by a failure to pay the parties to whom the firms were liable, and it was not necessary to a breach that Johnson should show that he had first paid these parties. It was not an agreement merely to indemnify Johnson from damage, but to assume the indebtedness and discharge him from liability."

In McAbee v. Cribbs, 194 Pa. 94, 44 Atl. 1066, the Supreme Court of Pennsylvania supports the same doctrine. There Cribbs, a grantee, assumed payment of a mortgage that had been given by McAbee. This was afterwards foreclosed, and a deficiency judgment entered against McAbee, who was decided to have an immediate right of action against Cribbs without first paying the judgment. The court said:

"As a contract of indemnity it was broken as soon as the plaintiff's liability became fixed, and he could then maintain an action on it without proof of payment. That on a bond or covenant to indemnify against claims the obligee is entitled to sue as soon as his obligation to pay becomes absolute, has been settled by a long line of cases."

So, in New York, the Court of Appeals in National Bank of Newburgh v. Bigler, 83 N. Y. 62, has pointed out the distinction between a contract for indemnity against loss and a contract for indemnity against liability:

"Where the indemnity provided is against a charge for fixed legal liability, the obligee is to be saved from the thing specified, and the right of action becomes complete on the defendant's failure to do the particular thing he agreed to perform; while, on the other hand, where the covenant is for indemnity only, and against resultant damages, these must be actually suffered before an action can be maintained."

Little need be added to these citations. In my opinion, they clearly establish the proposition that King's liability became fixed when the deficiency judgment was entered against him, and that he then acquired an immediate right of action against the defendants, which he could himself have enforced for the full amount of the judgment. This right has been transferred to the plaintiff, and the fact that the transfer was made on the same day as the satisfaction of the judgment against King, and as a part of that transaction, seems to me to have no importance. His right of action was complete as soon as the judgment was entered, for by such entry the defendants' contract was broken. The judgment was a charge. It bound King because he had executed the mortgages in suit, and from this charge the defendants had not saved him harmless. The rule that ordinarily fractions of a day are not regarded in legal proceedings has no application. And there is no inequity in compelling the defendants to pay. They are only being called upon to do the precise thing which they agreed to do, namely, to pay these mortgages in full. Part of their debt has already been paid by the application of the money produced by the sale of their land, and they are now asked to pay the balance in cash. In truth, the deficiency judgment was against themselves, for King was merely their agent or trustee, and the land was theirs, and not his.

Judgment is directed to be entered on the verdict, and to this order an exception is sealed in favor of the defendants.