In re DAVIS.

Appeal of WINTER.

(Circuit Court of Appeals, Third Circuit. November 11, 1909.)

No. 24.

BANKRUPTCY (§ 340*)—PROVABLE CLAIMS—SECURED DEBTS—PURCHASE OF MORTGAGED PROPERTY BY CREDITOR.

A bankrupt had given two mortgages on the same property in Pennsylvania, the second of which was held by a bank. Claimant, who was president of the bank, shortly after the bankruptcy bought the first mortgage, which was due, foreclosed it, and bought in the property at the sale for the costs, there being no competing bid at the sale because the two mortgages, both in effect held by the same interest, exceeded the value of the property. Claimant then filed the bond secured by the mortgage as a claim against the estate. He admitted as a witness that the property was worth more than the amount of the mortgage and costs. *Held* that, in the absence of any legal rule in the state making the sum bid at the sale conclusive as to the value of the property, such evidence should be considered, and the claim was properly disallowed as having been paid by the foreclosure.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania.

In the matter of Harry Davis, bankrupt. Emil Winter appeals from an order disallowing his claim against the estate. Affirmed.

Willis F. McCook, for appellant.

Maurice L. Avner, for appellee.

Before GRAY and LANNING, Circuit Judges, and McPHERSON, District Judge.

J. B. McPHERSON, District Judge. This is an appeal from an order disallowing a claim, and brings up all the evidence for examination. We find the facts to be as follows:

In June, 1903, Davis executed a purchase-money mortgage for $50,000 to secure the payment in June, 1908, of a bond in like amount. The mortgage provided that the debt should become payable at an earlier date if Davis should make default in paying the interest, insurance, taxes, or other municipal charges. On April 2, 1908, he was adjudged a bankrupt, and not long afterwards a trustee was duly elected. On April 16, 1908, Emil Winter bought the bond and mortgage, paying to the holder the full amount of principal and interest. At this time Davis was in default in the payment of certain taxes and water rents, and the principal sum secured by the bond and mortgage was due and collectible. A savings bank of which Winter was the president owned a second mortgage of $50,000 on the same premises. It was Winter's intention to acquire the property, and he pursued the method of buying the bond and mortgage, because the mortgage contained a clause giving 5 per cent. attorney's fees in case of foreclosure, and he desired to save that sum (or at least a part of it) by suing out the mortgage

himself, and thereby controlling the allowance for fees. On April 20, 1908, Winter petitioned the referee for leave to issue a scire facias in accordance with the Pennsylvania practice and foreclose the mortgage in the usual manner before any of the common pleas courts of Allegheny county. The referee made the order. Winter proceeded to judgment and execution, and the property was offered at sheriff's sale. What the value of the property was we. are not accurately advised. The only evidence on the subject is (to use. Winter's language) that it was "worth what I paid for it, and more," meaning the amount he paid for the mortgage; but, as no other person competed for the property, and Winter bid it in for the sheriff's costs, it is a fair inference that there was margin enough above his mortgage to admit of a satisfactory payment upon the mortgage held by his bank. The testimony on this point is not very definite, but it sufficiently appears, we think, that the bank was protected by Winter to some extent, and received enough money to quiet its claims. At all events, it is clear that the reason why no other bids were offered was because the two mortgages, amounting to $100,000 and controlled substantially by the same interest, were notice to intending purchasers that bidders would have to encounter these two debts, and could not expect to buy the property unless it should be worth a bid of more than that amount. The fact that no one entered the competition is convincing evidence that the property was not worth more than $100,000, and Winter's testimony is equally convincing that it was worth more than $50,000. There was no fraud in the sale, but the foregoing facts show plainly that the bidding was merely formal, and afforded no test of real value.

Winter, having become the purchaser, took title by sheriff's deed, and is now the absolute record owner. On November 6, 1908, not long after the sale, he presented to the referee a proof of claim upon the bond that accompanied the mortgage, declaring:

"That no part of said debt has been paid; that there are no offsets or counterclaims to same; that no note has been taken or received for said indebtedness except as herein stated; that no judgment has been rendered for said indebtedness or any part thereof, except as herein stated; and that to this defendant's knowledge or belief he has not had or received satisfaction or security, except as hereinafter stated, for said debt in any manner whatsoever. Claimant held a mortgage as collateral security for said bond, recorded," etc., "which was reduced to cash according to the terms thereof at No.," etc., "but nothing was realized therefrom; claimant buying said premises for costs."

The claim was objected to by the trustee and was afterwards rejected by the referee, whose action was approved by the District Court. From the court's decree, the present appeal is taken.

We are of opinion that the referee and the District Court were right in rejecting the claim. It is no doubt true that in Pennsylvania the bond is the principal debt, for which the mortgage is merely collateral security. There are numerous decisions that regard the mortgage for some purposes as an independent contract, but (speaking generally) the bond is the primary obligation. In Commonwealth v. Wilson, 34 Pa., the court says on page 67:

"In Pennsylvania a mortgage is considered merely as a security for the debt and confers upon the mortgagee nothing more than a lien upon the land."

And, in Eagle Beneficial Society's Appeal, 75 Pa. 226, it is said that:

"The bond is the principal debt in law and must govern the rights of the parties between themselves."

But, although this is true, it is equally true that the bond does not secure one debt while the mortgage secures another, and certain important consequences flow from the fact that the debt is the same in both instances. For example—and it is a striking illustration of the substantial identity of the two securities—it was held in Hodgdon v. Naglee, 5 Watts & S. (Pa.) 217, that:

"Payment by the obligor to the obligee of a bond accompanying a mortgage extinguishes the mortgage, even in the hands of an assignee of the mortgage for a valuable consideration, who neglects to give notice to the obligor of the assignment before payment of the bond."

See, also, Tubbs' Appeal, 161 Pa. 254, 28 Atl. 1109. This identity may be further illustrated by considering the situation that is sometimes presented when a judgment is obtained by suit upon the bond or by confession under a warrant of attorney. In such a case, when the judgment on the bond is entered, there are two distinct incumbrances on the debtor's land, one created by the recording of the mortgage, and the second created by the entry of judgment on the bond; but they have uniformly been treated by the Pennsylvania courts as the same lien. The Supreme Court declared, in Commonwealth v. Wilson, supra, that:

"If a sale is made on a judgment for the whole or a part of a debt, or even for the interest of part of a debt secured by a mortgage, it has the same effect as if the sale had been directly made under proceedings upon the mortgage security itself, and both before and since the act of 1830 it discharges the lien of a first mortgage."

The Act of 1830, thus referred to, is as follows:

"The entering of any judgment for the same debt secured by any mortgage shall not cause a sheriff's sale of the mortgaged premises to discharge or in any way affect the lien of such mortgage, nor shall the plaintiff in such judgment be entitled to any part of the proceeds of such sale, provided always, that such sale has not been made under or by virtue of such judgment." 1 Purdon's Dig. (10th Ed.) p. 479, par. 109.

And in Bury v. Sieber, 5 Pa. 431, it was said in reference to the two securities (in that case one of the liens was created by a deed instead of by a mortgage):

"We see no substantial difference between this case and McCall v. Lenox, 9 Serg. & R. [Pa.] 310; for the lien created by the deed, and the judgment on the bond on which suit is brought, arise out of the same transaction. They are in contemplation of law one instrument, form one security, and consequently the lien of the judgment, as is there decided, must relate to the date of the lien in the deed."

Still further, in dealing with another situation, which resembles more nearly the state of facts that is now before us, namely, where a mortgagee buys at sheriff's sale the property that is bound by his mortgage, but buys subject to his own incumbrance, the court has ruled in several cases that:

"If the purchaser is the mortgagee, his mortgage is in equity satisfied: his claim is paid in the purchase of the property sold subject to it." Greensburg Fuel Co. v. Natural Gas Co., 162 Pa. 85, 29 Atl. 275, and cases there cited.

Another recent case upon this subject is Cock v. Bailey, 146 Pa. 329, 23 Atl. 370, where the holders of bonds that were secured by a mortgage upon the property of a limited partnership bought the property subject to the lien of the mortgage, and had it conveyed to a trustee for their own benefit. The court held that the bonds became a part of the purchase money, and the liability of the mortgagor to pay them was extinguished; Chief Justice Paxson, who delivered the opinion, saying on page 339 of 146 Pa., page 371 of 23 Atl.:

"It would then appear that the bondholders have purchased, through a trustee designated by them, the mortgaged premises, subject to the lien of the mortgage. Having thus obtained the property, can they now proceed upon the bond and collect the amount thereof from the company or from the defendants as individuals? If so, they will be twice paid. That is to say, they will have both the money and the land. That this cannot be done is plain both upon reason and authority. Having purchased the property subject to the lien, the bonds became a part of the purchase money withheld at the time of the sale; in other words, they were a part of the bid."

This being the law of Pennsylvania, when a mortgagee buys property subject to his own incumbrance, it must certainly be the law also when he buys the property at a sale made by proceeding upon that very lien. And there is no doubt that the rule is as thus indicated: The lien of his mortgage is extinguished by the sale, and this is the result whether he pays little or much for the property. It is elementary that the incumbrance is merged in the title, and that the lien disappears.

But the appellant contends that although the lien is gone the debt may remain, either in whole or in part, and it is upon this theory that he offered to prove his claim upon the bond, insisting that while he was bound to credit upon the bond whatever he realized at the sale upon the mortgage he was bound to do no more, and therefore, since he had realized nothing, no credit should be given. This, in our opinion, is not a sound position, under all the circumstances of the present case. It fails to take into account that, while he obtained no money from the sale, he did obtain money's worth and now owns in fee the mortgaged premises, which he admits to be worth more than the full amount of his mortgage. The fact that he realized no cash from the sale does not seem to be material. He has property which concededly can be turned into cash and will then produce more than enough to pay the principal and interest of his mortgage. If he can prove his claim on the bond against the bankrupt estate, it must be for the reason that (if bankruptcy had not intervened) he could have sued Davis on the bond and recovered judgment against him for the full $50,000, and that this judgment might have been collected out of other property of which Davis was the owner. Thus the appellant would have received satisfaction twice over for the same debt, and it is clear enough, without further elaboration, that something wrong may be suspected about the reasoning that would lead to such a conclusion.

But in truth there is no reasoning that even seems to lead to this

conclusion; it is the authority of decided cases that is invoked to support it; and we have therefore been at some pains to show what the state court has held upon several important and relevant questions growing out of the coexistence of these two securities. They all throw light, we think, upon the precise question that is presented by this appeal, namely: Where a mortgagee buys the mortgaged property in good faith at a sale upon his own security, paying a merely nominal sum therefor, and it appears affirmatively that the property is worth more than the mortgage, is the debt satisfied in full by the purchase, or is it only satisfied pro tanto? Certainly, the Pennsylvania cases to which we have already referred show plainly what answer should be given to this question, if the inquiry is still open. The creditor is not to be paid twice, unless some rigid requirement of the law compels a court to reach that result; and (under the facts stated) the only rule that is urged upon us is said to be a rule that the price bid for the property is conclusive evidence of its value. If such a rule exists in Pennsylvania, it must be susceptible of easy proof. Only two cases, however, are cited to support the position, and neither is sufficient.

It should first be noted that in this state there is no such thing as a deficiency judgment, and therefore we need not consider decisions elsewhere upon the effect of such a proceeding—a deficiency judgment rendered in New York was involved in Cudaback v. Hay (C. C.) 134 Fed. 120, and Hay v. Cudaback, 139 Fed. 369, 71 C. C. A. 465—but it is undoubtedly true in Pennsylvania, as a general proposition, that after a mortgagee has exhausted his mortgage and has failed to realize the full amount of his debt he may proceed upon his bond to recover the balance. The dictum in Bradley v. Chester Valley R. R. Co., 36 Pa. 150 (one of the cases cited by the appellant), is sound enough, although Justice Woodward was speaking generally of "the remedies of a mortgagee against his mortgagor as existing at common law and as modified in equity," and did not have special reference to the Pennsylvania practice by scire facias. The following is the sentence upon which the appellant's counsel lays particular stress (page 150):

"After final decree of foreclosure, the mortgagee might sell the estate, and, according to some authorities, if he did this fairly, and it produced less than the mortgage debt, he might still have remedy against the mortgagor's other estate for the balance of the debt."

But the question now under consideration was not there involved, even remotely, and nothing whatever is said about it. The other case (Wolfe's Appeal, 110 Pa. 126, 20 Atl. 410) is more nearly in point. There Wolfe sold a leasehold to Wright and took a mortgage as security for part of the purchase money. After default by Wright, the mortgage was sued out and the property sold by the sheriff to Wolfe for $1,024.87. This sum was credited upon his claim, and he was then allowed to prove the balance against the estate of Wright; the Supreme Court saying (page 130 of 110 Pa., page 410 of 20 Atl.):

"The mortgage he took was his only security. Having exhausted that without realizing the full amount of his claim, he has a right of recourse against the estate of his debtor for the residue."

But an examination of the facts will disclose that Wolfe's Appeal differs from the present case in a material point. The figures show plainly that the sale was competitive, and so far as appears the property was sold for its full value. This is assumed by the court, and there is no trace of controversy upon the subject; whereas, it appears here by affirmative proof—the testimony of the appellant himself—that, while he bid a merely nominal sum, he acquired property that was worth more than his debt. So far as we are advised, therefore, the Supreme Court of Pennsylvania has not laid down the rule that the price paid for property sold under a mortgage is under all circumstances to be regarded as conclusive evidence of value, and (assuming that we should be bound by such a rule) we are free to decide the question that is now before us according to our best judgment.

There is nothing in Hiscock v. Varick Bank, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945, that lays down the rule contended for by the appellant. In that case insurance policies were pledged as collateral security under an agreement which authorized the pledgee to sell without notice and to buy at his own sale; the pledgor expressly agreeing to "remain liable for any deficiency arising upon such sale." The securities were, accordingly, bid in by the pledgee at a bona fide sale, credit was given for the price, such price being found by the Supreme Court to be adequate, and proof of the balance of the debt was allowed against the bankrupt estate. There is no suggestion in the case that any such question as is now presented was raised at any stage of the proceedings, or was considered by the Supreme Court, and, in view of the pledgor's express agreement to be liable for any deficiency arising upon the sale, it is difficult to see how the question could possibly have been involved.

The present appeal does not require us to construe section 57, subsections "e" and "h," of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]). The value of the appellant's security, namely, of the land that was mortgaged to secure the debt, was no doubt "determined" by the proceeding upon the scire facias; but the point that is before us is a question of fact rather than a question of law, namely: How much was that value? If there was a legal rule in Pennsylvania that made the sum bid at a sheriff's sale conclusive evidence of value in all cases, a question of law would be presented, for (if the rule bound us) we should not go behind the bid; but, as we are not advised of any such rule, we feel at liberty to inquire into the question of fact for ourselves. Upon the evidence, as we have already said, there seems to be no difficulty in finding that the value exceeded the debt due to the appellant, and that he has therefore received full value for his bond and mortgage.

It may be as well to add that the District Court did not collaterally attack the proceedings in the court of common pleas, or seek to modify their effect in any particular. The court of common pleas simply confirmed the sale and directed a sheriff's deed to be made to the appellant, but it did not attempt to decide how much credit the appellant was bound to give upon his bond. That question was not necessarily involved in the decree confirming the sale, but was raised for the first

time before the referee. In our opinion, it was properly decided by him and by the District Court.

The decree is affirmed, at the costs of the appellant.