In re SOLTMANN.

(District Court, S. D. New York. December 14, 1916.)

1. BANKRUPTCY ⬥334—CLAIMS—PROOF—SECURED CLAIM—DEFICIENCY.
   Under Bankr. Act July 1, 1898, c. 541, § 57h, 30 Stat. 560 (Comp. St. 1913, § 9641), providing that the value of securities held by secured creditors shall be determined by converting them into money according to the agreement under which they were delivered to the creditors, or by the creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and that the amount of such value shall be credited upon such claims, and a dividend paid only on the unpaid balance, a creditor, whose claim was secured by mortgage which he had foreclosed in an action begun after the bankruptcy proceedings were instituted, in which the receiver was made a party with the consent of the bankruptcy court, but not the trustee, cannot prove against the bankrupt's estate the amount of deficiency judgment as such, but only the difference between the mortgage debt and the reasonable value of the property, since the judgment could not bind the trustee, who was not a party to the action.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 501–507; Dec. Dig. ⬥334.]

2. BANKRUPTCY ⬥334—PROOF OF CLAIMS—SECURED CLAIM—"LITIGATION."
   In Bankr. Act, § 57h, providing that the value of the security held by a creditor of a bankrupt may be ascertained by litigation, as the court may direct, the word "litigation" is a comprehensive term, meaning any appropriate action or proceeding in the courts wherein the secured creditor and the trustee may each be heard, including foreclosure and sale.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 501–507; Dec. Dig. ⬥334.
   For other definitions, see Words and Phrases, First and Second Series, Litigation.]

3. BANKRUPTCY ⬥334—PROOF OF CLAIMS—SECURED CLAIM—AGREEMENT.
   Knowledge and acquiescence by the trustee in bankruptcy of proceedings for the foreclosure of a mortgage given by the bankrupt, if construed as an agreement by the trustee as to the method of liquidation of the security under Bankr. Act, § 57h, is invalid, because not under the direction of the bankruptcy court, as required by that section.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 501–507; Dec. Dig. ⬥334.]

4. BANKRUPTCY ⬥336—PROOF OF CLAIMS—AMENDMENT—STATUTE.
   Under Bankr. Act, § 57k, providing that claims which have been allowed in part may be reconsidered for cause, and reallowed or rejected, before the estate has been closed, and section 57n, limiting the time for proving claims, a claim by a mortgagee for the amount of a deficiency judgment rendered in the state court, which was erroneously allowed by the referee

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on the judgment alone, may be amended, so as to show the excess of the debt over the reasonable value of the property, and allowed as to such excess.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 523, 524; Dec. Dig. ☞336.]

In Bankruptcy. In the matter of Edward G. Soltmann, bankrupt. On review of an order of the referee allowing the claim of R. Bleecker Rathbone. Order reversed, with leave to the creditor to apply to amend his claim.

Walter B. Raymond, of New York City, for trustee.
Eugene L. Bushe, of New York City, for creditor.

MAYER, District Judge. This is the review of an order made by the referee in bankruptcy allowing the claim of one R. Bleecker Rathbone at $14,872.23. On June 30, 1915, a petition in involuntary bankruptcy was filed against Soltmann, and a receiver in bankruptcy (Charles M. Bleecker) was appointed by the District Court. On July 13, 1915, the adjudication was had. Prior to the bankruptcy, Soltmann and his wife had executed and delivered to one Seibt a mortgage on certain real property as security for Soltmann's bond, and this mortgage was later assigned to Rathbone. On August 5, 1915, Rathbone began an action in the state Supreme Court to foreclose the mortgage and contemporaneously filed the usual lis pendens. On August 11, 1915, Rathbone applied for leave to sue and to join the receiver in bankruptcy as a party defendant, and on the same day the District Court made the following order:

"Ordered, that said R. Bleecker Rathbone be and he is hereby permitted to institute and maintain an action in the Supreme Court of the state of New York, New York county, against the said Edward G. Soltmann and said Charles M. Bleecker, as such receiver in bankruptcy of the said Edward G. Soltmann, for the foreclosure of a mortgage dated July 28, 1910, made by Edward G. Soltmann and Millie L. Soltmann, his wife, to Emil Seibt, and recorded in the office of the register of the county of New York on the 29th day of July, 1910, in Section 3, Liber 203 of Mortgages, page 461, and assigned to the said R. Bleecker Rathbone by assignment dated September 21, 1910, recorded in said register's office on September 28, 1910, in Section 3, Liber 218 of Mortgages, page 18, and that R. Bleecker Rathbone have leave to serve the necessary and proper papers in said action upon said Charles M. Bleecker as such receiver," etc.

On August 16, 1915, a trustee in bankruptcy was elected. On October 28, 1915, the usual decree of foreclosure and sale was made by the state court, and on November 23, 1915, the foreclosure sale was had, resulting in a deficiency, and a deficiency judgment was entered by Rathbone against Soltmann on December 31, 1915, for $16,334.50, with interest from December 30, 1915. The trustee was never made a party to the foreclosure suit.

The claim filed by Rathbone on January 5, 1916, was for $16,334.50, with interest from December 30, 1915; Rathbone alleging:

That "the said debt exists upon a judgment for deficiency docketed in the office of the clerk of the county of New York on December 31, 1915, in an action brought in the Supreme Court, New York county, against the said Edward G. Soltmann and others, to foreclose the mortgage on real property here-

inafter mentioned. * * * That the consideration of said debt is as follows: Moneys loaned and advanced to said Edward G. Soltmann by Emil Seibt, and secured by a bond and mortgage made by the bankrupt to said Emil Seibt, * * * which mortgage was duly assigned * * * to R. Bleecker Rathbone. * * * That said mortgage was duly foreclosed by action in said court, and said judgment thereafter rendered. * * * That deponent has not, nor has any person by his order, or to his knowledge or belief, for his use, had or received any manner of security for said debt whatever."

[1] It will be noted that the foreclosure suit was begun after the adjudication in bankruptcy. At the time of the adjudication Rathbone was a secured creditor. If he did not wish to surrender his security, his claim could be liquidated only in the manner provided by the bankruptcy statute. Section 57h provides:

"h. The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance."

This section was construed in Hiscock v. Varick Bank of New York, 206 U. S. at page 40, 27 Sup. Ct. at page 685, 51 L. Ed. 945, where the court said:

"The court was by this subdivision empowered to direct a disposition of the pledge, or the ascertainment of its value, where the parties had failed to do so by their own agreement. It is only when the securities have not been disposed of by the creditor in accordance with his contract that the court may direct what shall be done in the premises."

Rathbone had the alternative of foreclosing the mortgage according to its terms and filing a claim for the unpaid balance, or of applying to the bankruptcy court for its direction as to the method of liquidation. Subject to the approval of the court, Rathbone and the trustee could have agreed on the value of the security or arbitrated or compromised as to such value.

[2] Failing such a disposition, the court could have ordered that the value of the mortgage should be ascertained by litigation—in this case, by foreclosure and sale—or by proof before the referee of the value of the security. The word "litigation," as used in section 57h, is a comprehensive term, meaning any appropriate action or proceeding in the courts to ascertain the value of the security, wherein the secured creditor and the trustee may each be heard. If the court was of opinion that the best and most expeditious method was to sell under foreclosure, it could order the claim liquidated in that manner. If, on the other hand, because of delay or some other reason, the court thought the preferable method would be to ascertain value by testimony before the referee in bankruptcy, it could so order.

By the failure to join the trustee, the deficiency judgment was not binding on him, and is, therefore, not proof of the amount of the unsecured claim. Of course, the parties may agree that security be sold without notice, as in Hiscock v. Varick Bank, supra; but no such agreement is shown here.

[3] It was stated on the argument that the trustee, through his attorney, knew of and acquiesced in the foreclosure suit; but such knowledge could not vary the original agreement between mortgagor and mortgagee, and, if construed as an agreement as to method of liquidation, it was without validity for lack of the court's direction, as provided in section 57h.

By the failure to obtain the court's order as to the method of liquidation, proof of the amount of the unsecured claim, by receiving in evidence only the deficiency judgment, was futile. The real question, primarily, was what was the value of the mortgage, and not what was the amount of the deficiency judgment in a suit to which the trustee was not a party.

There is some difference of opinion as to whether the value is to be ascertained as of the date of filing the petition or as of the date of adjudication. In the case of active stock market securities, the exact date is often very important; but, in a case like this, the market was probably the same in June as in July, 1915.

While the real estate law in Pennsylvania differs from that of New York, in some respects, the fact that the true inquiry is as to the real value of the property is illustrated by In re Davis, 174 Fed. 556, 98 C. C. A. 338, and In re Dix (D. C.) 176 Fed. 582. So here, for instance, the creditor can prove, among other things, what price the property sold for on November 23, 1915, if market conditions were the same as in the summer of 1915; but the trustee can also show what all the circumstances were—i. e., whether, for instance, there was competitive bidding, or the defect in title was known, and the like.

The point is that the deficiency judgment in this case proves nothing, and is no evidence of the amount of the unsecured claim.

[4] Although the claim was presented on the wrong theory, the creditor should have an opportunity of proving whatever may be the correct amount of his unsecured claim, and he may move to amend or take such other course as he may be advised. In re Salvator Brewing Co. (D. C.) 188 Fed. 522, affirmed 193 Fed. 989, 113 C. C. A. 626; Bankruptcy Act, §§ 57k, 57n.

The determination of the referee is reversed, with leave to the creditor, Rathbone, to apply to amend his claim and take such other proceedings in respect thereof as he may be advised.

Settle order on three days' notice.

NOTE.—I have read as part of the record the order made by Judge AUGUSTUS N. HAND on August 11, 1915, and the motion papers upon which it was granted. As a condition of amending the claim, the creditor should pay the actual disbursements of the proceeding thus far had before the referee. Other details, if any, can be submitted on the settlement of the order.