## THE ANGLO–PATAGONIAN.

(Circuit Court of Appeals, Fourth Circuit.  July 5, 1916.)

No. 1431.

1. ADMIRALTY ⬤⇒20—JURISDICTION—TORT BY VESSEL IN DRY DOCK.

A dry dock in which a seagoing vessel is placed for repairs is a part of the navigable waters, and a suit against the vessel for negligence causing injuries to workmen engaged on the repairs is within the admiralty jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 216, 225, 231; Dec. Dig. ⬤⇒20.]

2. ADMIRALTY ⬤⇒21—JURISDICTION—SUIT FOR WRONGFUL DEATH—PLACE OF DEATH.

That one of the injured workmen, while unconscious, was taken to a hospital on land, where he died, does not affect the jurisdiction of the admiralty court over a suit for his death, which is fixed by the place of the injury.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 218–220; Dec. Dig. ⬤⇒21.]

3. ADMIRALTY ⬤⇒21—JURISDICTION—ACTION FOR WRONGFUL DEATH.

A right of action for wrongful death, given by Code Va. 1904, § 2902, which provides that a ship or vessel, which would have been liable if death had not ensued, shall be liable to an action for damages or to a libel in rem, may be enforced by a suit in rem in a court of admiralty, where the injury occurred at a place within the maritime jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 218–220; Dec. Dig. ⬤⇒21.]

4. SHIPPING ⬤⇒84(3)—LIABILITY OF VESSEL FOR TORTS—INJURY TO WORKMEN MAKING REPAIRS.

While the hull of a ship was being repaired in dry dock, the anchor cable, which was held only by the brake, slipped, and the anchor dropped and crushed part of the staging, causing injuries to some of the workmen thereon. There were two other devices on the ship, the use of either of which would have made the anchor secure. Held, that the facts justified a finding that the ship was negligent, and decree holding it liable for the injuries.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 350; Dec. Dig. ⬤⇒84(3).]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Libels by William Ledwitch, by Peter Johnson, by Edward Pressy, by Enoch Spratley, and by R. D. Smith, administrator of William Byrd, deceased, against the steamship Anglo-Patagonian; Stanley Lord, master and claimant. These causes were consolidated and heard together. Decree for libelants, and claimant appeals. Affirmed.

For opinion below, see 228 Fed. 1014.

H. H. Little, of Norfolk, Va. (Hughes, Little & Seawell, of Norfolk, Va., on the brief), for appellant.

Allan D. Jones, of Newport News, Va. (E. S. Robinson, J. T. Newsome, T. J. Christian, and J. Winston Read, all of Newport News, Va., and William A. Graff, of Norfolk, Va., on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and JOHNSON, District Judge.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. The accident under review happened while the steamship Anglo-Patagonian was in dry dock at Newport News, Va. The vessel had been injured in a collision, which made it necessary to cut away and replace a number of plates in and around the bow and to straighten the stem. In order to have this work done the vessel entered the dry dock, where, after the water had been withdrawn, it rested upon keel and bilge blocks. The rigging gang of the dry dock company, which contracted to make the repairs, erected staging around the bow, on both the starboard and the port sides. This staging was supported by two uprights immediately in front of the bow, resting upon the bottom of the dock, connected by cross-beams, and lashed to the forecastle. Upon these cross-beams at various heights rested the forward ends of planks, the rear ends of which were supported by rope slings swung from convenient places on the deck and rail. The workmen making the repairs stood upon these planks.

The vessel went into dry dock on the 2d of June, 1915, which was Wednesday. Work commenced immediately, and continued day and night until about noon of Saturday, three days later, when from some cause the starboard cable slipped, and the anchor, suspended above the workmen, dropped slowly to the bottom of the dock, crushing a part of the staging and hurling the men to the bottom, causing the death of one, seriously injuring three, and inflicting minor injuries on another. It appears that the anchor had been hanging on the brake, which constituted its only support. This brake was an iron band extending almost entirely around the drum of the windlass, and could be loosened or tightened by a threaded spindle connecting the two ends. When tightened, the brake band held the drum on the windlass by compression and friction, which prevented the anchor chain from running out through the hawse pipe. Ordinarily this support was sufficient, according to the testimony of several witnesses; but when it was desired to make the anchor absolutely secure other means were provided. Any one of several methods could be used; the anchor could be lashed to a ring bolt in the deck, or the chain stopper could be set, clamping the chain. Another method in common use is to fasten a link of the chain to the "devil's claw." The Anglo-Patagonian could have adopted either of the first two methods, but was not equipped with a devil's claw. According to the testimony the chain stopper was covered with paint and had not been recently used.

Libels were filed by the injured workmen and by the administrator of the one who was killed. Exceptions to the jurisdiction were overruled, and the causes consolidated and heard together. The trial court upheld the right of recovery, found as a fact that the accident was caused by the neglience of the steamship, and fixed the damages, aggregating $18,600, to which each libelant was deemed entitled.

[1] Two grounds are relied upon to reverse the decree. It is argued in the first place that the accident did not occur upon any "navigable waters of the United States," and therefore an action for damages for the resulting injuries was not within the jurisdiction of admiralty. In other words, since the vessel was not afloat at the time, but rested upon supports in the bottom of the dry dock, the contention is made

that the accident happened on land, and for that reason was not cognizable by an admiralty court. This contention rests upon no sustainable basis and must be rejected. The Robert W. Parsons, 191 U. S. 17, 33, 24 Sup. Ct. 8, 48 L. Ed. 73; The Steamship Jefferson, 215 U. S. 130, 142, 30 Sup. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907; Atlantic Transport Company v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157. See also the case of The Raithmoor, 241 U. S. 166, 36 Sup. Ct. 514, 60 L. Ed. 937, decided by the Supreme Court May 1, 1916. The first two cases hold distinctly that a dry dock, such as the one in question, is part of the navigable waters, and constitutes a place or locality which is subject to admiralty jurisdiction. Under the ruling in the Robert W. Parsons Case, it is not open to discussion that the owners of a dry dock have a maritime lien for repairs to a seagoing vessel put in their dock for that purpose. And if the dry dock company in this case could sue in admiralty under its contract for repairs, we perceive no reason why its employés, engaged in making the repairs, may not sue in admiralty for injuries caused by the steamship's negligence. Upon this point the Imbrovek Case seems to us conclusive, since no valid distinction can be made, in the matter here considered, between a workman who is hurt in loading a vessel and one who is hurt in repairing a vessel.

[2] Nor, as regards admiralty jurisdiction, can the cases of the workmen who were injured be distinguished from the case of the workman who was killed. The circumstance that Byrd was taken in an unconscious condition, and therefore without his knowledge or assent, from the dry dock, where he was hurt, to a nearby hospital, where he died shortly afterwards, cannot serve to defeat the jurisdiction which, as we hold, would have attached if his death had occurred at the scene of the accident. On this question we follow with approval the decision of the Fifth Circuit Court of Appeals in The Gye Case, 207 Fed. 247, 124 C. C. A. 517, in which it is said:

"We deem it unnecessary in view of the conclusion reached on the merits to advert to the question of jurisdiction, more than to say that it is well settled by the weight of modern authority that the locus injuriæ is the test of jurisdiction. The Strabo, 98 Fed. 998 [39 C. C. A. 375]; The Aurora [D. C.] 163 Fed. 634."

[3] In the Code of Virginia (section 2902) it is provided that "the person who, or corporation or ship or vessel which, would have been liable, if death had not ensued, shall be liable to an action for damages, or, if a ship or vessel, to a libel in rem"; and this court held in The Glendale, 81 Fed. 633, 26 C. C. A. 500, that the lien created by this local statute was enforceable in a federal court of admiralty. To the same effect, and also holding that injury to a stevedore, employed in discharging cargo, occasioned by a defective appliance furnished by the ship, constitutes a maritime tort, is the recent case of The Chiswick, 231 Fed. 452, —— C. C. A. ——. In the light of the authorities cited, and others of a similar import, we think it clear that the plea of want of jurisdiction was rightly overruled.

[4] The other ground of appeal is the alleged lack of proof of any

negligence on the part of the steamship. Without reviewing the testimony, which has been carefully examined, we are constrained to hold that enough was shown to warrant the finding of the trial court upon this branch of the case. The master of the vessel was fully aware of the nature of the work to be done by the dry dock company, and this cast upon him the duty of exercising reasonable care for the protection of the company's employés. He must also have been aware that these employés would be exposed to obvious peril if the anchor, under which they had to work, should happen to fall, and he was therefore bound to see that it was securely fastened. The means for preventing such an accident as unhappily occurred were there at hand and could have been readily applied; and it seems to us that ordinary prudence would have dictated the use of the chain stopper, or the lashing of the anchor chain to the ring bolt in the deck, either of which methods would have insured absolute safety. Taking into account the actual situation, which involved extreme danger to the workmen in case the anchor should drop, we think that negligence was fairly inferable from the circumstance that it was held in place only by screw pressure upon the brake, which may not have been made sufficiently tight when the anchor was raised, of which there is at least a suggestion, and which was liable to become loosened by the jarring effect of the repair work, or from other causes—especially so, when ample means were available for so securing the anchor that it could not possibly fall. The mere fact that it did fall may not of itself be sufficient to charge the appellant with responsibility, under the doctrine of res ipsa loquitur; but for the reasons indicated we are of opinion "that by analogy the case well illustrates that rule," as the Supreme Court has just said in Reid v. Fargo, 241 U. S. 544, 36 Sup. Ct. 712, 60 L. Ed. 1156, decided June 12, 1916. In short, it seems clear to us that the question of negligence in this case was a question of fact which the court below has correctly decided.

Affirmed.