## THE STRATHEARN.*

(Circuit Court of Appeals, Fifth Circuit. March 24, 1919.)

No. 3140.

1. SEAMEN ⬡⇒24—WAGES—RECOVERY.

Act March 4, 1915, § 4 (Comp. St. § 8322), authorizing seamen to collect half their wages at ports of call after voyage commences, provided demand be not made before expiration of five days, etc., authorizes demand two days after calling at port, where over five days had elapsed since commencing voyage.

2. SEAMEN ⬡⇒4—WAGES—FOREIGN SEAMEN.

Act March 4, 1915, § 4 (Comp. St. § 8322), empowering seamen to collect half their wages at ports of call, and providing section should apply to seamen on foreign vessels while in American harbors, is applicable to British seamen shipped on British vessel in British port, while vessel is in an American harbor.

3. SEAMEN ⬡⇒15—WAGES—RECOVERY IN AMERICAN PORTS—LEGISLATIVE POWER—FOREIGN CONTRACTS.

Act March 4, 1915, § 4 (Comp. St. § 8322), empowering seamen to collect half their wages in American ports of call, is not invalid as rendering unenforceable in this country a wage contract lawfully made by foreigners in another country.

4. CONTRACTS ⬡⇒101(1)—VALIDITY.

A contract may be valid and enforceable where executed, but unenforceable in another jurisdiction.

5. CONSTITUTIONAL LAW ⬡⇒307—DUE PROCESS—DENIAL OF REMEDY—SEAMEN—WAGE CONTRACT.

Act March 4, 1915, § 4 (Comp. St. § 8322), empowering seamen to collect half their wages at American ports of call, does not unconstitutionally deprive a foreign vessel of contract rights without due process, because it renders unenforceable in American ports a wage contract lawfully entered into abroad.

Appeal from the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

Libel by John Dillon against the Strathearn Steamship Company, claimant of the steamship Strathearn. From a decree dismissing the libel (239 Fed. 583), the libelant appeals. Reversed.

Silas Blake Axtell, of New York City, L. W. Nelson, of St. Augustine, Fla., and W. J. & H. W. Waguespack, of New Orleans, La., for appellant.

J. E. D. Yonge, of Pensacola, Fla. (W. A. Blount, A. C. Blount, Jr., and F. B. Carter, all of Pensacola, Fla., and Ralph Jas. M. Bullowa, of New York City, on the brief), for appellee.

Frederic R. Coudert and Howard Thayer Kingsbury, both of New York City, specially appearing on behalf of the British vice consul at Pensacola, Fla., as amicus curiæ.

Before WALKER and BATTS, Circuit Judges, and BEVERLY D. EVANS, District Judge.

WALKER, Circuit Judge. [1] This is an appeal from a decree dismissing the libel of the appellant, John Dillon, against the British steamship Strathearn, to recover the wages the libelant had earned

as a carpenter on that ship prior to the date of his demand from the master of the ship, made two days after its arrival in the port of Pensacola, where the ship delivered cargo, of one-half part of the wages he had earned, which demand was not complied with. The action of the court was the result of its conclusion that the demand was prematurely made, having been made within less than five days after the arrival of the ship at the port where the demand was made, though no such demand had previously been made, and the appellant's service and the ship's voyage had begun several months before. The Strathearn (D. C.) 239 Fed. 583. The following is the provision of the statute:

"Every seaman on a vessel of the United States shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the wages which he shall have then earned at every port where such vessel, after the voyage has been commenced, shall load or deliver cargo before the voyage is ended and all stipulations in the contract to the contrary shall be void: Provided, such a demand shall not be made before the expiration of, nor oftener than once in five days. Any failure on the part of the master to comply with this demand shall release the seaman from his contract and he shall be entitled to full wages earned. * * * And provided further, that this section shall apply to seamen on foreign vessels while in harbors of the United States, and the courts of the United States shall be open to such seamen for its enforcement." Act March 4, 1915, c. 153, § 4, 38 Stat. 1165 (Comp. St. § 8322).

The provision that "such demand shall not be made before the expiration of, nor oftener than once in five days," is not to be given the effect of requiring that five days must have elapsed after the arrival of a ship at a port where it loads or delivers cargo before a demand for half wages can be made with the effect given to it by the statute. Evidently the intention was that such a demand should not have the effect given to it by the statute if it is made within five days "after the voyage has commenced," or if made sooner than five days after the making of a previous demand contemplated by the statute. The appellant's demand was not premature.

The decree appealed from is sought to be sustained on other grounds, of which mention will be made:

[2] It is contended that the appellant was not within the terms of the statute, because he was a British subject, who shipped on a British vessel in a British port. There is nothing to indicate that the word "seaman," in the clause "that this section shall apply to seamen on foreign vessels while in harbors of the United States," etc., was intended to include only seamen of this country, or that that clause was intended to have the same meaning it would have had if, instead of the word "seamen," the words "American seamen" had been used. Another clause in the same sentence, "and the courts of the United States shall be open to such seamen for its enforcement," makes it quite plain that foreign seamen are within the provision. It cannot be supposed that the last-quoted clause would have been inserted, if only seamen of this country had been in contemplation. Legislation was not needed to open the courts of the United States to them. Provisions of the act looking to the abrogation of treaties containing provisions inconsistent with it are indicative of the legislative intention to make such provi-

sions as the one in question applicable to foreign seamen while in the ports of the United States. The circumstance that the title of the act shows that a part of its purpose was "to promote the welfare of American seamen in the merchant marine of the United States" is not indicative of an intention to make the provision in question applicable to American seamen only. It well may have been regarded that competition of American seamen in foreign ports with foreign seamen for service on foreign vessels would be hampered, if in American ports only American seamen had the right given by the provision in question, so that on that ground the services of foreign seamen would be preferred by foreign vessels destined to American ports.

[3, 4] By the articles signed by the libelant in Great Britain he agreed to serve on a voyage not exceeding three years' duration to any port or places within designated limits, which included ports of this country, for stated wages, which, less advances made, were payable on completion of the agreed service, which had not been completed when the demand for half the wages earned was made. In behalf of the appellee it is contended that if the provision in question is so construed as to be applicable to the case at bar, it is invalid on the ground that it is one not within the legislative power of the United States to make, in that it undertakes to nullify contracts entered into between foreigners in a foreign jurisdiction, in which such contracts are valid and enforceable. The enforcement of the provision in question in behalf of a foreign seaman situated as the appellant was does not have that effect. From the fact that a contract is valid and enforceable in the jurisdiction in which it was made, it does not follow that it is effective to govern the relations of the parties to it while they are in another jurisdiction with the law or public policy of which it is in conflict. A contract may be valid and enforceable where it was made, and yet be unenforceable in another jurisdiction. Union Trust Co. v. Grosman, 245 U. S. 412, 38 Sup. Ct. 147, 62 L. Ed. 368; The Kensington, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190. The fact that the seaman and the vessel are British does not prevent the American law being applicable to them while both are in an American port. Patterson v. Bark Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002.

The shipping contract would be given the effect of contravening a law of the United States if it were permitted to prevent the acquisition and exercise of a right given to "seamen on foreign vessels while in harbors of the United States" by a statutory provision the terms of which make it plain that the right is given notwithstanding any contract stipulation to the contrary. The statute in question is not given an extraterritorial operation by according to it the effect of preventing the existence of a contract made in another jurisdiction from depriving a seaman who is a party to such contract of a right given to him by statute while both the seaman and the ship are within the territory of the nation the law of which gives the right. The foreign contract does not prevent the relations of the parties to it being governed by the law of the place where the seaman and the ship are. The law of the place where the contract was made would be given an ex-

traterritorial operation if it is allowed to determine the question of the enforceability of the contract in another jurisdiction, the law of which forbids the enforcement of such a contract.

[5] Another suggestion is that, if the provision in question is held to be applicable to the facts of this case, it is violative of the Constitution of the United States, in that it deprives a party of contract rights without due process of law. The statute does not purport to affect, and does not affect, the rights of the parties under a contract made in a foreign jurisdiction, except to prevent such contract standing in the way of the enforcement of the domestic law in behalf of and against parties who have subjected themselves to the domestic jurisdiction. "It is part of the law of civilized nations that, when a merchant vessel of one country enters the ports of another for the purposes of trade, it subjects itself to the law of the place to which it goes, unless by treaty or otherwise the two countries have come to some different understanding or agreement." Wildenhus' Case, 120 U. S. 1, 11, 7 Sup. Ct. 385, 387 (30 L. Ed. 565). A contract made in Great Britain for the services of a British seaman on a British vessel which goes to an American port is not so far effective as to be enforceable in the latter place, if its enforcement there would result in setting at naught the law of that place. As the foreign contract is incapable of giving the right claimed by virtue of it, the statute in question cannot properly be regarded as depriving a party to the contract of a right under it; the right claimed not being one which was conferred by the contract or otherwise. The obligation of a contract entered into in one jurisdiction does not extend so far as to entitle the parties to such contract to be exempt from the operation of the law of another jurisdiction to which they subject themselves, which law forbids such effect being given to the contract as is sought to be given to it in that jurisdiction. In our opinion the provision in question is not invalid on either of the grounds urged against it.

The court erred in dismissing the libel.

The decree appealed from is reversed.