JOSEPH RESIGNO, Administrator, etc., of ANTHONY RESIGNO, Deceased, Appellant, v. F. JARKA Co., INC., Respondent, Impleaded with NORDDEUTSCHER LLOYD, Doing Business under the Trade Name and Style of NORTH GERMAN LLOYD, Defendant.

First Department, June 24, 1927.

Ships and shipping — action for death of longshoreman — accident occurred on ship in navigable waters in New Jersey — ship was flying German flag — intestate died on land in New Jersey — intestate was resident of New Jersey and defendant was foreign corporation doing business in New Jersey — action brought under New Jersey death statute — if plaintiff can succeed on any theory, complaint may be sustained — plaintiff cannot succeed on theory that action was based on New Jersey death statute — New Jersey Workmen's Compensation Law affords exclusive remedy — intestate was German seaman — Merchant Marine Act of 1920, § 33, does not apply to foreign seamen — court has not jurisdiction.

This is an action to recover for the death of plaintiff's intestate, a longshoreman who was killed while working on a boat anchored in navigable waters of New Jersey. The boat was flying the German flag. The injuries from which the intestate subsequently died were suffered on the boat, but he died on land in New Jersey. The plaintiff's intestate was a resident of New Jersey and the defendant was a foreign corporation doing business in New Jersey. While plaintiff's action is brought apparently under the New Jersey death statute,

if it can be sustained on any theory, the fact that it was brought on the wrong theory will not bar plaintiff's right to recover. Plaintiff cannot recover under the New Jersey death statute, for the New Jersey Workmen's Compensation Law furnishes an exclusive remedy.

Plaintiff cannot recover under the Merchant Marine Act of 1920, for, being an employee on a German ship, he was a foreign seaman, and section 33 of the Merchant Marine Act does not apply to foreign seamen so as to give the courts of this State jurisdiction over a cause of action arising in New Jersey. The court not having jurisdiction, the complaint is dismissed.

FINCH, J., dissents, with opinion.

APPEAL by the plaintiff, Joseph Resigno, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of July, 1926, granting respondent's motion to dismiss the complaint as to it on the ground that the court has not jurisdiction of the subject-matter, and also from a judgment entered in said clerk's office on the 14th day of August, 1926, pursuant to said order.

*Harold R. Medina* of counsel [*Joseph Levy, Jerome L. Joseph* and *Edward Gluck* with him on the brief; *Levy & Becker*, attorneys], for the appellant.

*Charles B. McLaughlin* of counsel [*William S. Evans* with him on the brief; *Almy, Van Gordon & Evans*, attorneys], for the respondent.

O'MALLEY, J. The court has dismissed the complaint as to the appealing defendant upon motion made under rule 107, subdivision 2, of the Rules of Civil Practice. The question presented, therefore, is whether this court has jurisdiction of any cause of action alleged.

The complaint and the moving affidavits set forth the following facts: Plaintiff's intestate, hereinafter referred to as plaintiff, was employed as a longshoreman by the respondent F. Jarka Co., Inc., hereinafter referred to as the defendant. The latter was engaged in the business of a stevedore. On February 18, 1926, the defendant was loading and discharging cargo upon and from the steamship *Hanover*, lying in navigable waters at the city of Hoboken, N. J. This work was conducted under contract with the codefendant Norddeutscher Lloyd, the owner or operator of the vessel. The *Hanover* flew the German flag. The plaintiff was a resident of New Jersey. The defendant was a Delaware corporation duly authorized to do business in New Jersey, and plaintiff entered into his contract of employment with the defendant in that State. The defendant complied with all the requirements of the New Jersey Workmen's Compensation Law, and from the facts established it appears that plaintiff is bound by the provisions of this Compensation Law, provided a cause of action arising only under

the laws of the State of New Jersey is pleaded. On the day in question plaintiff sustained injury during the course of his employment while he was aboard the *Hanover.* On the evening of that day he died on land in a hospital in New Jersey.

As drawn the complaint upon its face seems principally to be predicated upon a New Jersey statute creating a cause of action for death through the negligence of another. But even though the complaint is so framed it may be upheld if it sets forth a cause of action predicated upon any theory. It is no ground of objection that it sets forth one or more theories of liability, provided a single cause of action is pleaded. (*Payne* v. *N. Y., S. & W. R. R. Co.,* 201 N. Y. 436.)

As already indicated, plaintiff may not succeed if his claim is based solely upon a New Jersey statute. His remedy is exclusively under the Workmen's Compensation Law of that State. This is especially so since the plaintiff died on land, and the New Jersey statute is a death and not a survival statute. (*Anderson* v. *Standard Oil Co. of New Jersey,* 124 Misc. 829, and cases cited.)

Formerly under the general maritime law no suit would lie in the admiralty courts of the United States to recover damages for death by negligence. (*Western Fuel Co.* v. *Garcia,* 257 U. S. 233, 240.) It is claimed, however, that this plaintiff has a cause of action which has been well pleaded under section 33 of chapter 250 of the 2d session of the 66th Congress, being the act of June 5, 1920 (41 U. S. Stat. 1007). The act is commonly known as the Jones Act. By its provisions it " may be cited as the Merchant Marine Act, 1920." (Now United States Code, tit. 46, § 688.) If plaintiff has pleaded any cause of action it must find its basis in this particular act.

Section 33 follows:

" Sec. 33. That section 20 of such Act of March 4, 1915, be, and is, amended to read as follows:

" ' Sec. 20. That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district

in which the defendant employer resides or in which his principal office is located.' "

Section 20 of the Seamen's Act of 1915 (38 U. S. Stat. at Large, 1185, chap. 153), known as the La Follette Act, referred to, read:

" Sec. 20. That in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow-servants with those under their authority."

The effect of the enactment of section 33 appears to have been to wipe out entirely section 20, except in so far as it might be retained by reference to the statute relating to the right of action for death in the case of railway employees.

Defendant maintains that as the plaintiff was working upon a German ship under the rule or law of the flag, he is to be deemed a German seaman. Section 33 of the Jones Act, it is claimed, is intended to inure to the benefit of American seamen only. On the other hand, plaintiff maintains that by reason of the broad language and because of other considerations urged, the section was intended to and does cover a case of the character now before us. It is urged that to otherwise construe the statute would result in placing additional burdens on American ships, when concededly the purpose of the Jones Act was to benefit the American merchant marine.

It may be admitted that Congress has power to place such burden upon foreign ships as well as those of American registry. (*Cunard S. S. Co.* v. *Mellon,* 262 U. S. 100; *Strathearn S. S. Co., Ltd.,* v. *Dillon,* 252 id. 348.) But we are concerned, not with what Congress might have done, but what it actually has done. Its intent must be gained from the wording of the statute under consideration.

Plaintiff's position is not strengthened by reliance on the statements and opinions of legislators given in the course of debates in Congress. As was said by our Court of Appeals in *Woollcott* v. *Shubert* (217 N. Y. 212, 221): " We are at liberty to study the debates in seeking and determining the evil against which it was aimed as a remedy. In case they clearly and definitely describe an unworthy or mischievous condition necessitating, in the legislative mind, the statute, they furnish the court, laboring to discover the intent of the Legislature, with legitimate and trustworthy aid. As Blackstone tersely expressed it, in the interpretation of statutes due regard must be had to the old law, the mischief and the remedy. The mischief may be indicated or made apparent by the debates attending the adoption of the remedy, as well as by contemporaneous events and the relevant situation as it existed."

But the court further stated: "It is established law, however, that the *statements and opinions* of legislators uttered in the debates are not competent aids to the court in ascertaining the meaning of statutes." (Italics ours.)

Moreover, the disclosure that the applicability of the entire act to foreign vessels was a matter of comment and concern in Congress is as much an argument against plaintiff's contention as in favor of it. Those parts of the debates on the subject quoted show that there was a serious question with respect to such applicability. Other sections of the Jones Act are specifically made applicable to foreign vessels. (41 U. S. Stat. at Large, 1006, § 31, amdg. U. S. R. S. § 4530; 41 U. S. Stat. at Large, 1006, 1007, § 32, amdg. Seamen's Act of 1915 [38 id. 1168, 1169], § 11; now United States Code, tit. 46, §§ 597, 599.) But section 33 contains no specific application. If it were a matter of concern as to how far this act was to apply to foreign vessels or seamen and certain sections therein were made expressly applicable thereto, it is but a fair conclusion that those sections not made applicable to foreign vessels by specific provision or by plain implication were not intended to apply to foreign vessels or seamen.

The argument that this construction would result in placing a restriction upon American and not upon foreign vessels and that by reason thereof the latter would be given an advantage over the former, does not refute our conclusions. The purpose of the Jones Act was by its very words " To provide for the promotion and maintenance of the American Merchant Marine   *   *   *." (41 U. S. Stat. at Large, 988, chap. 250.) A merchant marine consists not only of ships and their owners and operators, but also of seamen. Which one, if any, is the most important, it is not necessary to consider. But certainly a body of seamen is an indispensable part of any merchant marine. Shipowners and operators were given certain privileges over foreign vessels and operators. American seamen, therefore, were the logical recipients of certain privileges over those enjoyed by seamen on foreign vessels. It well might be that the privilege granted to any one of the three component parts of the merchant marine would result in disadvantage to one or both of the others. In certain cases a disability or restriction upon one would be necessary for the good of all. If the Jones Act was intended to apply in all respects to foreign vessels and if each and every restriction under its general scheme and correlative legislation was intended to apply equally to foreign vessels it would follow as a necessary corollary to the proposition advanced by the plaintiff that foreign ships, when in the ports of this country, would have been required

to furnish the same quarters as those required for American seamen and foreign seamen would be entitled to receive the same pay and rations and be entitled to all privileges of American seamen.

Formerly a stevedore or longshoreman was not a seaman, but under changed conditions by which such men have assumed some of the duties heretofore devolving upon seamen, a longshoreman or stevedore under the instant circumstances is denominated a seaman. The ship on which, and not the employer for whom, the work is being done has been held to control. (*International Stevedoring Co.* v. *Haverty,* 272 U. S. 50.) Here plaintiff became a seaman by virtue of the nature of the work he was doing. But as such work was for a German ship, he should be held to be a German seaman. Unless, therefore, section 33 of the Jones Act applies to foreign vessels, the plaintiff has no cause of action under the act.

Section 33 is not to be taken literally. It is to be noted that whereas its concluding words state that "jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located," it has been held that this jurisdiction, with respect to the subject-matter, is not exclusive. (*Panama R. R. Co.* v. *Johnson,* 264 U. S. 375; *Patrone* v. *Howlett,* 237 N. Y. 394.) It does not do violence, therefore, to the section to hold that the seamen to which it applies are American and not foreign seamen.

As already appears, the end sought to be achieved by the Jones Act was the promotion of an American merchant marine. To that end certain inducements were offered to shipowners and operators to take out American registry. It was just as important to induce seamen to work on vessels so registered for this purpose. Seamen so employed were also granted certain privileges. All other things being equal, a seaman would naturally prefer to be employed aboard an American vessel where in case of death compensation could be had. To hold, therefore, that section 33 of the Jones Act does not apply to foreign seamen is not to subvert the plainly avowed purpose of the legislation, but is to carry out its evident general scheme.

In what way, it might be asked, would the American merchant marine be promoted by the granting of the same privileges to foreign seamen as those bestowed upon American seamen? In what manner was plaintiff's work upon the German vessel promoting the American merchant marine? But one authority directly in point is cited by plaintiff, and even what was there said on the question here involved may be regarded as dicta. (*Stewart* v. *Pacific Steam Navigation Co.,* 3 F. [2d] 329.)

On the other hand, *Clark* v. *Montezuma Transp. Co., Ltd.* (217 App. Div. 172), a decision of our Second Department, is squarely in point on the question under consideration. There the plaintiff, an American, though hired by the mate of the ship, had not signed articles. The court held that as the vessel was a British ship, the plaintiff was not an American, but a British seaman. It further held in most emphatic language, several times expressed, that section 33 relates only to American seamen and accordingly denied plaintiff relief thereunder. Mr. Justice YOUNG, who wrote, stated: "I think the Jones Act, by its terms, indicates its application only to seamen employed upon American vessels."

Dicta though they may be, other reported cases seem clearly to indicate the soundness of the conclusion reached in *Clark* v. *Montezuma Transp. Co., Ltd.* (*supra*). (*The Navarino*, 7 F. [2d] 743, 744; *Rainey* v. *New York & P. S. S. Co.*, 216 Fed. 449, 454.) The plaintiff being employed upon a German vessel must be held, therefore, to have been a German seaman so far as the purview of section 33 is concerned. In determining such status, direct employment by the ship is no more important than the signing of articles. He has no cause of action, therefore, under the Jones Act. Admittedly he has none under the general maritime law. His cause of action, if any, arose under the New Jersey Death Act. Upon the facts here disclosed such right is subordinated to his remedies under the provisions of the New Jersey Workmen's Compensation Law, by which he is bound. Upon the facts before us, that is his sole remedy, if any. For its enforcement this court clearly has no jurisdiction.

It follows, therefore, that the order and judgment appealed from should be affirmed, with costs.

DOWLING, P. J., MCAVOY and MARTIN, JJ., concur; FINCH, J., dissents.

FINCH, J. (dissenting). The legislation known as the Jones Act, or the Merchant Marine Act of 1920, applies to the cause of a stevedore who receives fatal injuries upon a foreign vessel in an American port, while engaged in loading or unloading the same as an employee of an American stevedoring corporation. International law permits, and the Congress has authority to subject, foreign merchant ships to the jurisdiction of the United States when within its territorial waters. In *Cunard S. S. Co.* v. *Mellon* (262 U. S. 100) Mr. Justice VAN DEVANTER said: "A merchant ship of one country voluntarily entering the territorial limits of another subjects herself to the jurisdiction of the latter. * * * The implied license, therefore, under which they enter, can never be construed to grant such exemption."

Having the authority, " the statute extends territorially as far as Congress can make it go, and there is nothing in it to cause its operation to be otherwise than uniform." (Mr. Justice VAN DEVANTER, speaking for the court, in *Panama R. R. Co.* v. *Johnson,* 264 U. S. 375.) If construed otherwise, this statute (41 U. S. Stat. at Large, 988, chap. 250), entitled " An act to provide for the promotion and maintenance of the American merchant marine," etc., which amends the Seamen's Act of 1915 (38 id. 1164, chap. 153), entitled " An act to promote the welfare of American seamen in the merchant marine of the United States," etc., would have deprived American seamen of its protection while serving on foreign ships and would have caused discrimination against them when seeking employment. It would also have given an advantage to foreign ships as against American ships. The wording of the Jones Act is general. Its generality makes the statute all inclusive and applicable wherever United States territorial jurisdiction exists. The statute says, " any seamen," not " any seamen except American seamen or stevedores (who, in *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50, are held to be seamen when doing work formerly done by a member of the crew) when working on a foreign vessel." Similar legislation has been held applicable to foreign vessels in ports of the United States. Such a case was that with respect to the statute giving seamen the right to receive part of their earned wages on demand. This was held applicable to seamen on foreign vessels while in the waters of the United States, and the contention that the statute was unconstitutional because destructive of contract rights validly acquired abroad, was held unsound. (*Strathearn S. S. Co., Ltd.,* v. *Dillon,* 252 U. S. 348, affg., 256 Fed. 631.) The question whether the Jones Act applies to the case of a stevedore who is fatally injured upon a foreign vessel in an American port while doing work formerly done by the crew and in the employ of an American stevedoring corporation, has not been finally passed upon by the courts. Most of the authorities relied upon by the respondent involve a libel *in rem* or relate to the internal affairs of foreign vessels in our waters, or are not dealing with the legislation in question. The respondent urges that the case of *Clark* v. *Montezuma Transp. Co., Ltd.* (217 App. Div. 172) is an authority in its favor. That case, however, involved a direct employment of the plaintiff by the mate of the ship. It may well be that while one country has undoubted authority to legislate, as heretofore shown, with reference to merchant ships of other countries voluntarily within the territorial waters of the former (*Cunard S. S. Co.* v. *Mellon, supra*), nevertheless the exercise of this right may be withheld in so far as concerns the libeling *in rem* or the internal affairs of

such foreign vessels. A transitory personal injury action, however, brought by a seaman resident of New Jersey against an American stevedoring corporation occupies a very different field. Whether the Jones Act would apply to the former, however, does not now concern us since the latter is clearly within its provisions and with the latter only we are now dealing. Also the learned justice writing for the court in *Clark* v. *Montezuma Transp. Co., Ltd. (supra)* was careful to point out that if the seaman had not signed articles for the voyage on the foreign ship, the Jones Act would have been applicable, the court saying: " The respondent insists that the plaintiff is to be regarded as an American seaman because he had not signed articles for any voyage on a foreign ship. Of course, if this proposition is correct, he is entitled to recover for the negligence of his fellow-servants, under the Jones Act." Obviously in the case at bar the decedent had not signed articles for a voyage upon the foreign ship.

On the other hand, there is the case of *Stewart* v. *Pacific Steam Navigation Co.* (3 F. [2d] 329), where Judge LEARNED HAND said: " The general bestowal of jurisdiction is to be found in the right sentence, the long one [*i. e.,* the first long sentence of section 33 quoted above]; it lays down what the right shall be, and against whom it shall exist. As I have already said, this language is general. There is no indication of any purpose to limit it to United States corporations, and it would be highly unreasonable to impute any such purpose to Congress, for the result would be, not only to deprive American seamen of the protection which the Act was meant to give them when serving on foreign ships, but to give advantage to such ships as against American ships. We all know that the purpose of Congress was directly the opposite. That being very clearly the main purpose of the act." (See, also, *Panama R. R. Co.* v. *Johnson,* 264 U. S. 375.) Defendant, respondent, urges that a contrary argument may be drawn from the fact that section 33 of the Jones Act (41 U. S. Stat. at Large, 1007, chap. 250) does not in terms say that it applies to foreign ships, whereas certain of the other sections of this act which so apply, say so in express terms. This argument overlooks the historical original of section 33. This section was enacted as an amendment of a previous statute, namely, section 20 of the Seamen's Act of March 4, 1915 (38 U. S. Stat. at Large, 1185, chap. 153), known as the La Follette Act, which applied alike to foreign and domestic vessels. When, therefore, this section was amended as at present, it was unnecessary to say that the same should apply both to foreign and domestic vessels. It follows that this legislation known as the Jones Act applies to the case at bar.

The further objection urged that no recovery can be had in this case because the death occurred on land, is unsound. The proper test of admiralty jurisdiction in a case such as the one at bar is whether the fatal cause comes in contact with the body of the deceased in navigable waters. If such is the fact, admiralty has jurisdiction, even though the death occurs on shore. In *U. S. Shipping Board Emergency Fleet Corporation* v. *Greenwald* (16 F. [2d] 948) the Circuit Court of Appeals, Second Circuit, through Judge MANTON, said: " In *Luckenbach S. S. Co.* v. *Campbell* (9th Circuit) 8 F. (2d) 223, the injury occurred on board ship and the death as a result of the injury occurred on shore. The suit was under section 33 of the Jones Act (Comp. St. § 8337a), which in a case of death resulting from a tort gives the personal representative of the deceased a right to maintain an action. It was there held that the coincidence of the seaman's death on land did not affect the right of relief accorded to his personal representative."

In *The Anglo-Patagonian* (235 Fed. 92) the Circuit Court of Appeals, Fourth Circuit, through Judge KNAPP, said: " Nor, as regards admiralty jurisdiction, can the cases of the workmen who were injured be distinguished from the case of the workman who was killed. The circumstance that Byrd was taken in an unconscious condition, and therefore without his knowledge or assent, from the dry dock, where he was hurt, to a nearby hospital, where he died shortly afterwards, cannot serve to defeat the jurisdiction which, as we hold, would have attached if his death had occurred at the scene of the accident. On this question we follow with approval the decision of the Fifth Circuit Court of Appeals in the *Gye Case*,* 207 Fed. 247, 124 C. C. A. 517, in which it is said: ' We deem it unnecessary in view of the conclusion reached on the merits to advert to the question of jurisdiction, more than to say that it is well settled by the weight of modern authority that the *locus injuriæ* is the test of jurisdiction. *The Strabo,* 98 Fed. 998, 39 C. C. A. 375; *The Aurora* (D. C.) 163 Fed. 634.' " To the same effect is *Kursa* v. *Overseas Shipping Co.* (217 App. Div. 775). The facts in the case at bar would clearly sustain a finding that the fatal injury occurred on navigable waters. Distinction must be made between this case and one where a wrongful act starts on shipboard but the real injury is caused on land, or where the entire injury happens on the land. (*Egan* v. *Morse Dry Dock & Repair Co.*, 214 App. Div. 226.)

Independently of the above, however, it would seem that the

---

* *Hamburg-Amerikanische Packetfahrt A. G.* v. *Gye.*— [REP.

Jones Act affords the remedy in such an action as the one at bar and it has been so held. (*International Stevedoring Co.* v. *Haverty*, 272 U. S. 50; *Patrone* v. *Howlett*, 237 N. Y. 394; *Panama R. R. Co.* v. *Johnson*, 264 U. S. 375.) The court may take judicial notice of the Federal statutes without their being pleaded. (*Ingersoll-Rand Co.* v. *U. S. Shipping Board E. F. Corp.*, 195 App. Div. 838.)

Moreover, even though the complaint sets forth the New Jersey statute giving a cause of action in case of death, yet since the plaintiff has also set forth all the facts which he claims relate to the accident, such complaint may fairly be construed as setting forth several grounds of liability, if such there be, and that but a single cause of action has been pleaded upon which the plaintiff is entitled to recover if he may do so upon any theory. (*Payne* v. *N. Y., S. & W. R. R. Co.*, 201 N. Y. 436.)

It follows that the plaintiff stated a cause of action and the complaint should not have been dismissed.

Judgment and order affirmed, with costs.