[redacted]

## THE CITY OF VANCOUVER.

## RICE v. VANCOUVER S. S. CO., Limited.

No. 6698.

Circuit Court of Appeals, Ninth Circuit.

Aug. 15, 1932.

[redacted]

NETERER, District Judge, dissenting.

[redacted]

Lord & Moulton, of Portland, Or., for appellant.

Erskine Wood and Gunther F. Krause, both of Portland, Or., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

WILBUR, Circuit Judge.

The decedent was aboard a ship alongside the dock at Westport, Ore. He was engaged in doing the work of a longshoreman aboard the ship, being an employee of Astoria Stevedoring Company. A load of lumber which was being hoisted to put aboard ship fell on the decedent and injured him so severely that he died shortly after being taken ashore. The trial court dismissed the libel on the ground that it had no jurisdiction in admiralty over the tort resulting in the death of the decedent. The trial court followed the decision of Judge Bean in The Kaian Maru (D. C.) 2 F.(2d) 121, holding that the law of Oregon permitting recovery for death was a death statute, that is, a statute permitting the relatives to recover for injuries they suffer by reason of the death of a decedent, and that under such a statute the injury to them occurred at the time of death and not at the time of the accident, and that, as the death and consequent injury to them had occurred ashore, admiralty had no jurisdiction, whereas, in his opinion, had the death occurred aboard ship or had the statute under which recovery was permitted been a survival statute, that is, a statute wherein the decedent's right to recover for a tort survives, and can be enforced by his executors, administrators, or heirs, the admiralty court would have had jurisdiction. It is not questioned that the courts of Oregon have consistently held that the statute of Oregon permitting the recovery for death is what is known as a death statute. There are a number of decisions of District Courts holding that under such statutes the right of action arises at the time of death and not at the time of injury, and consequently, where the death occurs ashore, there is no jurisdiction in admiralty. The Kaian Maru (D. C.) 2 F.(2d) 121, supra; Pickles v. Leyland (D. C. Mass.) 10 F.(2d) 371; Ryley v. Philadelphia & R. Ry. Co. (D. C. N. Y.) 173 F. 389. The jurisdiction of admiralty has been sustained in two cases by Circuit Courts of Appeals, one in the Fourth Circuit, where the death occurred ashore (The Anglo-Patagonian, 235 F. 92), and another in the fifth circuit, where the death occurred ashore (The Chiswick, 231 F. 452). In each of these cases the state statute involved, that of Virginia (section 2902, Code Va.) and Florida (Gen. Stats. Fla. 1906, §§ 3145, 3146), respectively, was a death statute. Spradlin v. Ga. Ry. & Elec. Co., 139 Ga. 575, 77 S. E. 799; Florida C. & P. R. v. Foxworth, 41 Fla. 1, 25 So. 338, 79 Am. St. Rep. 149; Duval v. Hunt, 34 Fla. 85, 15 So. 876. The precise question presented to us for decision was not discussed in either of the two above-mentioned opinions, but an examination of the records and briefs in those cases discloses the fact that in both of them the point was raised and necessarily decided by the respective courts. In re The Chiswick, supra, it was claimed that, as the decedent died ashore, the case was not within admiralty jurisdiction. It was argued that the Florida statute was a death statute (citing Tiffany, Death by Wrongful Act, § 24; Seward v. Vera Cruz, 10 App. Cas. 59, 67, by the House of Lords, Whitford v. Panama Railroad Co., 23 N. Y. 465; Matter of Meekin, 164 N. Y. 145, 58 N. E. 50, 51 L. R. A. 235, 79 Am. St. Rep. 635; Seaboard A. L. R. Co. v. Moseley, 60 Fla. 186, 53 So. 718; Florida E. C. R. v. Jackson, 65 Fla. 393, 62 So. 210; Duval v. Hunt, 34 Fla. 85, 15 So. 876, supra; Florida C. & P. R. v. Foxworth, 41 Fla. 1, 25 So. 338, 79 Am. St. Rep. 149, supra). Counsel contended as follows:

"* * * The widow's cause of action is not for the wound inflicted on the decedent on the ship, but for the death of the decedent, which took place on the land.

"This is a new cause of action, which the decedent never had. The widow's damages did not arise until the death occurred. The substance and consummation of the widow's cause of action arose on the land, and therefore were beyond the jurisdiction of the admiralty court."

In support of this contention in that case the appellant cited Ex parte Phœnix Ins. Co., 118 U. S. 210, 6 S. Ct. 1176, 30 L. Ed. 128; Johnson v. Chicago & Pacific Elevator Co., 119 U. S. 388, 7 S. Ct. 254, 30 L. Ed. 447; Cleveland Terminal & V. R. R. Co. v. Steamship Co., 208 U. S. 316, 28 S. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215; The Plymouth, 3 Wall. 20, 18 L. Ed. 125; Ryley v. Philadelphia R. R. Co. (D. C.) 173 F. 839. The last two cases are relied upon by appellee in the case at bar. It follows that the decision of the Circuit Court of Appeals of the Fifth Circuit that the court of admiralty had jurisdiction is a direct determination of the question involved in the case at bar. In the decision by the Circuit Court of Appeals for the Fourth Circuit (The Anglo-Patagonian, 235 F. 92, supra), the main contention of the parties as to jurisdiction arose from the fact that the ship was in dry dock, hence it was contended that neither the injury nor the death ashore resulting therefrom occurred within admiralty jurisdiction. The fact that the injured workman was taken ashore and

died there, was not stressed in the briefs, although in the appellant's reply brief it was said:

"Section 2902 of the Code, quoted on page 17 of appellee's brief, in connection with the libel on behalf of Byrd, is Virginia's Lord Campbell's act, and the general rule and the law as stated in 'The Glendale' is not controverted.

"While giving a lien, however, it is not for a cause of action which survives, but is a new cause of action entirely.

"In discussing this provision the Supreme Court of Appeals said:

" 'It is not (sic) intended to withdraw from the wrongdoer the immunity from civil liability which the rule of the common law afforded him, and to provide for the recovery of such damages, notwithstanding the death of the injured person. In so doing, however, it plainly did not intend to continue or cause to survive his right of action for the injury, but to substitute for it and confer upon his personal representative a new and original right of action. (Citing cases.) * * * If the effect of the statute is, as was contended, to cause the right of action to survive, the suit by his personal representative would be to recover damages for the injury the deceased had sustained and the detriment caused to his estate. * * * But in a suit by the personal representative under the statute the evidence would primarily relate to and the damages be not only for the pecuniary loss the wife, husband, parent or child had sustained, but it would be proper for the jury * * * to take also into consideration the grief and mental anguish of such relatives and their loss in being deprived of the care, attention and society of the deceased.' Anderson v. Hygeia Hotel Co., 92 Va. 687, 691, 692 [24 S. E. 269].

"Byrd's administrator therefore is suing, not for the injury received by Byrd, but for damages for his death. The 'substance and consummation' of his wrong occurred at the hospital, and the decision in Ryley v. R. R. Co. [D. C.] 173 F. 839, passing, as it does, upon a statute of exactly the same character, is identically in point."

In considering the jurisdiction of a court of admiralty under the circumstances it should be remembered that neither at common law nor by the general maritime law was there a right to recover for death (Rundell v. La Campagnie Generale Transatlantique (C. C. A.) 100 F. 655, 49 L. R. A. 92; Mobile L. Ins. Co. v. Brame, 95 U. S. 756, 24 L. Ed. 580; The Alaska, 130 U. S. 201,

9 S. Ct. 461, 32 L. Ed. 923; The Harrisburg, 119 U. S. 199, 7 S. Ct. 140, 30 L. Ed. 358), and that admiralty courts having jurisdiction of cases resulting in death have adopted the more humane course of following the law of states, or nations, permitting such recovery where applicable. There seems to be no good reason why in admiralty there should be a jurisdictional distinction between the two types of statutes permitting recovery for death where the injury from which the death results occurs on board ship and within admiralty jurisdiction. Statutes of states and nations providing such a remedy have been applied by courts of admiralty in the interests of humanity. If this is the true basis for admiralty jurisdiction, there is no broad ground for making the distinction between the two types of statutes in question. The circumstances are identical in each case. It is true that in determining questions of jurisdiction fine distinctions are very often made and are frequently determinative of the question, but there seems to be no good reason for such a distinction here, particularly as the law applicable aboard ship where the injury occurs is the same as that ashore where the injured man died.

Decree of dismissal reversed.

NETERER, District Judge (dissenting).

I think the order of dismissal should be affirmed.

The libelant seeks to recover damages for death, under the Oregon statute. Sections 51-601 and 5-703, Oregon Code Annotated, are involved:

"51-601. Claims giving rise to liens.—Every boat or vessel used in navigating the water of this state or constructed in this state shall be liable and subject to a lien:

"1. For wages due to persons employed, for work done or services rendered on board of such boat or vessel.

"2. For all debts due to persons by virtue of a contract, expressed or implied, with the owners of a boat or vessel, or with the agents, contractors, or subcontractors of such owner, or any of them, or with any person having them employed to construct, repair, or launch such boat or vessel, on account of labor done or materials furnished by mechanics, tradesmen, or others in the building, repairing, fitting, and furnishing, or equipping such boat or vessel, or on account of stores and supplies furnished for the use thereof, or on account of launchways constructed for the launching of such boat or vessel.

"3. For all sums for wharfage, anchor-

age, or towage of such boat or vessel within this state.

"4. For all demands or damages accruing from the nonperformance or mal-performance of any contract of affreightment, or of any contract touching the transportation of persons or property, entered into by the master, owner, agent, or consignee of the boat or vessel on which such contract is to be performed, *and for damages or injuries done to persons or property, * * * by such boat or vessel resulting in the death of any person.*" (Italics supplied.)

All liabilities are personal to the vessel. No action is created in favor of next of kin or legal representatives in case of death, to give admiralty jurisdiction. The decedent, at death, had no personal relation to the ship. This statute does not give a libel in rem against the vessel for damages (The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760), nor to the next of kin, or legal representatives. It is not a "survival statute." Process in rem is founded upon a right in the ship (the estate has no right), and the object of process or attachment is to obtain the vessel. A suit in rem cannot be maintained without service of process on the vessel, and admiralty is impotent to direct process where no right of action in admiralty exists and no lien exists by statute in favor of the suitor. Nor does the "death act" ("5-703. Death from injury, when representatives may sue —Statute of limitations—Amount of recovery.—When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action at law therefor against the latter, if the former might have maintained an action, had he lived, against the latter, for an injury done by the same act or omission. Such action shall be commenced within two years after the death, and damages therein shall not exceed $10,000, and the amount recovered, if any, shall be administered as other personal property of the deceased person." Section 5-703, Oregon Code Annotated.) does not give remedy by libel in rem or attachment in aid; nor did the right of action accrue until death on land. This latter act is distinguished from a "survival act" in which action accrues on the vessel and survives to the next of kin, or whomsoever the statute nominates, and admiralty attaches at injury, although death occurs on shore; and no survival right is given by section 51-601, supra.

The lien or privilege sought to be impressed is not founded on any rule of maritime law, but upon a created right by state statute, and, if the right is nonexistent, the libel fails.

The origin of admiralty regulation of navigation and commerce was the power of the admiral. Anciently, he was a great officer, governed the Navy, and adjudicated all maritime matters, and his power in navigation and commerce extended over the navigable waters to all parts of the world. The origin is in doubt, probably Asiatic, unknown in Europe before the time of the Holy Wars. The admiral judged all matters relative to merchants and mariners pursuant to law of Oleron, which was taken, so far as it was available, from the Rhodian law, which was promulgated about 70 years after the reign of Solomon, king of Israel. Justice Holmes in The Blackheath, 195 U. S. 361, 365, 25 S. Ct. 46, 47, 49 L. Ed. 236, said: "The precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history." The autocratic power of the admiral by long period of melioration and unfolding through development of common rules of principles and usage which grew out of conduct and habits of those engaged in maritime commerce found expression in the equitable system of admiralty law now in force among the nations. Each nation has its admiralty rules and law. The Supreme Court in The Lottawanna, 88 U. S. (21 Wall.) 558, at page 572, 22 L. Ed. 654, said: "Maritime law can hardly be said to have a fixed and definite form as to all the subjects which may be embraced within its scope. * * * No nation regards itself as precluded from making occasional modification suited to its locality and the genius of its own people and institutions."

The written rule, no doubt, first found expression after the need was established by rules and principles, usages, developed by the conduct and habits of those engaged in traffic on the sea, suited to people in definite localities and special institutions. Our admiralty rules and law are dependent on laws of the United States (The Lottawanna, supra; The Elfrida, 172 U. S. 186, 19 S. Ct. 146, 43 L. Ed. 413); and rights or liens created by state statute in favor of the suitor are administered in admiralty.

The admiralty extends to the high seas, and also to navigable rivers, whether tidal or not (The Moses Taylor, 71 U. S. (4 Wall.) 411, 18 L. Ed. 397), and to rivers and lakes which are highways of commerce (The Daniel Ball, 77 U. S. (10 Wall.) 557, 19 L. Ed.

999); not to a river not of itself a highway for interstate or foreign commerce.

The Constitution of the United States, article 3, § 2, par. 1, grants judicial power to the United States District Courts in all cases of admiralty and maritime jurisdiction. Originally, the admiralty jurisdiction was but another phrase for the power of the admiral, next in power to the monarch, and extended to nonadmiralty cases "beyond the sea." The ancient and time-honored privilege of admiralty (Edward's Ad. Juris. 17), Smart v. Wolf, 3 T. R. 348, does not obtain under our Constitution. English Stat. 2, Henry IV, c. 2, provides: " * * * Admirals shall not intermingle anything done in the realm but only of a thing done upon the sea." The added word "maritime" in our law restricts admiralty to maritime service. In The Eclipse, 135 U. S. 599, at page 608, 10 S. Ct. 873, 876, 34 L. Ed. 269, the court says: "The jurisdiction embraces all maritime contracts * * * and it depends, in cases of contract upon the nature of the contract, and is limited to contracts * * * and services purely maritime. * * *" And, by the same token, the like grants and restrictions apply to torts.

A maritime lien is a necessary basis for an admiralty proceeding in rem, and may be prosecuted in any district where the offending vessel is found. The Propeller Commerce, 66 U. S. (1 Black) 574, 17 L. Ed. 107. No right of action is given, or lien created, to the next of kin, or legal representatives, in the instant case. It is a claim for a secret lien, and would operate to the prejudice of the general creditors, and is stricti juris, and not to be extended by construction, analogy, or inference. Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U. S. 490, 43 S. Ct. 172, 67 L. Ed. 364. A maritime lien can be effected only by act of Congress, state statute, or by visible contact with, or occurrence relating to, the service of the ship, and must be a manifest and open, ocular, physical endeavor of maritime service or liability which may serve as notice to the world of an existing claim. The principle of hypothecation is the basis of a maritime lien, and the hypothecation cannot apply upon a secret agreement between the owners, nor can a lien apply for tort resulting in death, under the Oregon statute, no lien existing or libel in rem given to next of kin or legal representatives of deceased, death not occurring on the ship. Until death on land there was no cause of action. When death occurs on the ship, the act is open and obvious, and the lien is effective. But, when the injury occurred on the ship, no lien being created against the ship by the Oregon statute for the loss by death to next of kin or his estate, death following upon the land, an enforceable right of action was created in the state court. Cordrey v. The Bee, 102 Or. 636, 201 P. 202, 20 A. L. R. 1079.

The ship has a personality of her own, is bound by her contracts, and is liable for her obligations and her torts. Tucker v. Alexandroff, 183 U. S. 424, 22 S. Ct. 195, 46 L. Ed. 264. But not for the tort to others, unless made so by statute.

The Supreme Court in The Harrisburg, 119 U. S. 199, 7 S. Ct. 140, 30 L. Ed. 358, held that, in the absence of an act of the Congress or state statute giving a right of action therefor, admiralty has not jurisdiction to award damages for death of a human being on the high seas for negligence. The admiralty court is a court of limited jurisdiction, and has such powers only as are conferred by the Constitution and laws. No discretion is vested in the exercise of admiralty jurisdiction; nor can the admiralty court concern itself as to the policy of different types of statutes permitting recovery for death, where injury results. The Oregon statute creates a right, but not to the next of kin or estate by "survival act," nor does it prescribe a remedy to enforce the right by libel in rem and give admiralty jurisdiction by creating a lien for death either on or off the ship through negligence on the ship to the injured's estate or next of kin. The distinction between the several types of statute is a matter for the Congress (Turner v. Bank of N. A., 4 Dall. 10, 1 L. Ed. 718; Case of the Sewing Machine Companies, 85 U. S. (18 Wall.) 553, 21 L. Ed. 914) or the several states by statute creating a lien or giving libel in rem to named parties.

The law of the sea which embodies principles of the general admiralty law was in existence during the Confederation, and was by the Constitution given national control and recognized as the law of the United States, subject only to Congress to supplement and modify (The Allianca, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748) and liens created by state statutes. The Lottawanna, supra; Edwards v. Elliott, 88 U. S. (21 Wall.) 532, 22 L. Ed. 487; The Robert W. Parsons, 191 U. S. 17, 24 S. Ct. 8, 48 L. Ed. 73; The Glide, 167 U. S. 606, 17 S. Ct. 930, 42 L. Ed. 296. The power and limited jurisdiction of admiralty courts is discussed in Krauss Bros. Lumber Co. v. Dimon SS. Corp'n (D. C.) 53 F.(2d) 492, 493, and in

The New Moon (D. C.) 55 F.(2d) 928, 929; and The Alaska (D. C.) 225 F. 643. Some statements are here repeated, and much of what was there said with relation to the development and history of admiralty and the jurisdiction of admiralty courts has application here, except that the interpretation of the Oregon law by the highest court of the state must be accepted by this court. N. P. Ry. Co. v. Meese, 239 U. S. 614, 36 S. Ct. 223, 60 L. Ed. 467; Truckee River Gen. Elec. Co. v. Benner (C. C. A.) 211 F. 79. No cases are cited which, to my view, have any application to afford a basis for reversal. It is admitted that section 5-703 has been adjudicated by the highest court of Oregon a "death statute."

The Anglo Patagonian (C. C. A.) 235 F. 92, is concluded by Hamburg-Amerikanische Packetfahrt Aktien Gesellschaft v. Gye (C. C. A.) 207 F. 247. In this case, at page 253, the court said: "We deem it unnecessary in view of the conclusion reached on the merits to advert to the question of jurisdiction, more than to say that it is well settled by the weight of modern authority that the locus injuriæ is the test of jurisdiction. The Strabo, 39 C. C. A. 375, 98 F. 998; The Aurora (D. C.) 163 F. 634."

The Anglo Patagonian, supra, was a proceeding under the Code of Virginia, § 2902, which provides: "The * * * vessel which, would have been liable, if death had not ensued, shall be liable * * * to a libel in rem." This statute created a lien enforceable in admiralty. The Glendale (C. C. A.) 81 F. 633. Not so the Oregon statute.

It is obvious that the Anglo Patagonian, supra, sustains dismissal in The Kaian Maru (D. C.) 2 F.(2d) 121. While the libel in The Anglo Patagonian, supra, was predicated on the state statute giving libel in rem, the court based its conclusion upon The Strabo (C. C. A.) 98 F. 998, 999, which was an action for an injury sustained by a person descending from a ship to the wharf by means of a ladder negligently left unfastened to the rail of the vessel; it having slid along the rail while he was descending and libelant was thrown upon the wharf and injured. The decisive issue was the "insecurity" of the ladder upon the ship. The ship in that case was liable in rem under the maritime law, and the court said: "The important question in the case is that of the jurisdiction of a court of admiralty over a tort caused by the negligence of the master upon navigable water, in regard to the security of the ladder upon the ship, * * * and the known

injurious consequences having been suffered by the fall upon the land, * * * " and the court held that the wrongful agency took effect on the ship, and the libelant was hurled from his position on the ship, and before he reached the dock he was subjected to conditions inevitably resulting in physical injury, and the ship was liable, wherever he finally struck; and the issue now before the court was not involved. The court held that the ship in that case in any event was liable in rem under the maritime law. The insecurity of the ladder, the descent on the ladder, and the fall were one act, the inevitable result was on the ship, and right of action obtained under the maritime law.

The Chiswick, a per curiam decision, was based on section 3145, Gen. Compiled Laws of Florida, 1906, but enacted in 1883, which gives right of recovery of damages for death negligently produced; and by the following section (3146) this right of action is made to survive.

No cases are cited in support of the "opinion" of the court for the simple reason that there are none, nor is the conclusion to me supported by reason, and, it seems, is against reason and precedent, and should not be followed by this court. The Samnanger (D. C.) 298 F. 620, held that a state statutory right of action for death on navigable water, where no libel in rem is given or lien created, does not give admiralty jurisdiction. See, also, The Plymouth, 70 U. S. (3 Wall.) 20, 18 L. Ed. 125; Pickles v. Leyland (D. C.) 10 F.(2d) 371.

Hughes on Admiralty says, under the survival act, the right of action is consummated when the fatal injury is inflicted, and, in the death act, right of action is not consummated until death; that, in the one, admiralty has jurisdiction for the fatal injury invoked on the vessel, though death occurred on land, while in the "death act," there was no cause of action until death, although the injury was inflicted upon the vessel, and death occurred on the land, and, in the latter case, admiralty has not jurisdiction. Hughes on Admiralty (2d Ed.) pp. 234–6.

It may also be suggested that, while maritime law may be changed, the Supreme Court in The Lottawanna, supra, held that the courts cannot change the law; they can only declare it; and, if a change is desired, it must be by the legislative department of the government.

The case of Uravic v. Jarka Co., 282 U. S. 234, 51 S. Ct. 111, 75 L. Ed. 312; Id., 248 N. Y. 225, 162 N. E. 13, which was an action

as to the applicability of the Jones Act, as amended by Act June 5, 1920 (title 46, § 688, USCA), has no application here.

The judgment should be affirmed.